## William Fraser et al., Appellants, v. Grace Fraser, Appellee.

## Gen. No. 5,056.

1. EXECUTORS AND ADMINISTRATORS—*when charge of fraud not sustained.* A charge of fraud against executors is not sustained by showing that the executors had represented that a "decree is now in full force and effect and no appeal has been taken therefrom," when in fact previous to the making of such representation a writ of error had been sued out to review such decree, such writ of error not having been made a supersedeas.

2. EXECUTORS AND ADMINISTRATORS—*effect of order of discharge.* An order of discharge made by the Probate Court is a discharge only so far as the particular matters appearing upon the face of the account are concerned and the formal discharge on a final accounting operates only as to the accounts of the parties up to that period; other assets may be realized and new liabilities incurred, involving a continuance of duty and responsibility.

3. EXECUTORS AND ADMINISTRATORS—*effect of order of discharge upon pending writ of error.* An order of discharge entered by the Probate Court does not preclude parties in interest from gaining the fruits of a successful prosecution of a writ of error pending at the time of the entry of such order of discharge, such writ of error having for its object the gaining for the estate, through a reversal of the decree reviewed, of other and additional assets than those credited to the estate by the executors.

4. ADMINISTRATION OF ESTATES—*section 114 of act construed.* The imposition of interest upon executors at ten per cent pursuant to section 114 of chapter 3 Revised Statutes was intended as a penalty and only five per cent should be charged as against assets which in good faith had been unsuccessfully contended were not the property of the estate and were therefore not subject to distribution.

5. INJUNCTIONS—*who cannot attack as void.* A party who has obtained an injunction will not be heard to say that the same was void and should have been disobeyed.

6. DECREES—*effect of failure to review.* A decree not reviewed is binding and conclusive upon the parties thereto with respect to the subject-matter thereof.

7. INTEREST—*upon legacies. Held,* in this case, that the allowance of interest to legatees was proper.

8. JUDICIAL SALES—*when not set aside.* One who has bought land at a judicial sale and paid for it and obtained a deed, cannot, after a lapse of years, be relieved from such purchase upon the sole

ground that when he knowingly and intentionally bid twice its value in order to cut off the rights of third parties, he had been incorrectly advised as to the law by his own attorney.

Petition to vacate approval of executor's report. Appeal from the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded with directions. Opinion filed June 10, 1909.

**Statement by the Court.** At the commencement of the legal proceedings concerning the estate of William Fraser, deceased, involved in this suit, jurisdiction of the estate was in the County Court of Kane county, and afterwards a probate court was organized in said county, to whose jurisdiction said estate was transferred. Said courts will be herein referred to as the Probate Court. On October 13, 1903, the Probate Court approved a final report theretofore filed by the executors in the estate of William Fraser, deceased, and declared said estate closed. The present proceeding arises from a petition filed in the Probate Court on August 21, 1906, asking the court to vacate the approval of said report and the closing of said estate, and to charge the executors with a large additional sum of money, and to cause the same to be distributed. This petition was filed by legatees under the will of the deceased, who had received but a small portion of their respective legacies when the estate was declared closed. A second amended petition was filed and answered, and upon a hearing in the Probate Court, an order was entered setting aside the previous settlement of the estate, charging the executors with a large additional sum as received by them, and charging them with the penalty of ten per cent per annum from a certain date, and allowing the legatees interest at five per cent per annum from the same date. Grace Fraser who was then the only resident executor, appealed from that order to the Circuit Court, where, upon a hearing, the petition of the legatees was dismissed. They prosecuted this appeal to this court. The mat-

ters here involved have been before this court in Fraser v. Fraser, 110 Ill. App. 619, and Fraser v. Fraser, 128 Ill. App. 73; and many of the facts are there stated, and we refer to those opinions for any details not fully set forth herein.

William Fraser died September 8, 1895, leaving no descendants, but leaving surviving him Grace Fraser, his widow. He left a will and a codicil thereto, each of which was duly admitted to probate, wherein he made provision for his wife and also gave numerous legacies to collateral relations, and appointed Grace Fraser and George McDonald executors of the will. His personal estate consisted chiefly of four promissory notes, executed by Fred W. Sadler, three for the principal sum of $6,666.66 each and one for the principal sum of $5,800, upon which there was much past due and unpaid interest, so that the aggregate due thereon when the executors filed their inventory, was over $31,000. These notes were secured by mortgages resting upon lands near the city of Elgin. After the mortgages were given, Sadler subdivided the land into lots, and had sold many lots and had given deeds therefor. The executors filed bills to foreclose these mortgages, and had decrees for foreclosure, and the premises were sold at master's sales, and Grace Fraser, the widow, and one of the executors bid at said sales sums aggregating $25,986 and became the purchaser of the premises at that price. On August 30, 1898, the executors filed a report in the Probate Court, wherein they charged themselves with $25,986 as received from the mortgaged property upon the foreclosures, and credited themselves with the expenses of said foreclosures. Said report was approved on August 30, 1898. On April 7, 1902, nothing having been done towards the distribution of said estate or the payment of said legacies, Grace Fraser, in her own right filed a bill in equity in the Circuit Court, setting up the proceedings above mentioned, and stating that the value of the premises at the time of said

purchases by her at said foreclosure sales did not exceed $12,000; that she was advised by her attorney that as her husband had left no descendants, if she renounced the provisions of the will in her favor she would be entitled to all the personal estate of the deceased, after payment of his debts, and that, relying on that advice, she did renounce the provisions of the will; that she was advised by her attorney that she ought to bid so high at said foreclosure sale as to prevent the premises from being redeemed, and that upon becoming the owner she could vacate the plat, and that it would make no difference to her how much she bid, because she would receive all the personal property as against the legatees under the will; that, relying on that advice she bid double what the property was worth; that she had recently learned that, under the law, after she had renounced the provisions of her husband's will in her behalf she would be entitled to only one-half of the personal estate; that no part of the purchase price was actually paid by her to the master, except an amount sufficient to pay the costs and expenses, and no part of the purchase price was actually paid to the executors as such, though they receipted to the master in chancery therefor; that if she was obliged to account for said purchase price, she would not only receive no benefit from her husbands' estate as his widow, but she would have to take her own estate to pay the legatees; that she desired to have the premises resold, and the proceeds paid to the executors in place of the proceeds of said original foreclosure sales; and that the legatees were threatening to take steps to make her account for the proceeds of the foreclosure sales. The bill prayed that the premises be resold and the proceeds paid to the executors in lieu of the proceeds of the foreclosure sales; that the complainant, as purchaser and as executor, be relieved from having to account for the proceeds of the foreclosure sales; and that the legatees and benefi-

ciaries under the will be restrained from attempting to make the complainant, as purchaser, or the executors, account for the proceeds of such foreclosure sales. The legatees were non-residents, and were served in the manner provided for serving non-residents; and were defaulted. The executors entered their appearance as defendants. On June 30, 1902, the complainant had a decree pursuant to the prayer of the bill, directing the re-sale of the premises, the payment of the expenses out of the proceeds, and the payment of the remainder to the executors, and that they should receive such sum instead of the proceeds of the foreclosure sales, and should dispose of the proceeds as executors in the administration of the estate of William Fraser, instead of the proceeds of the foreclosure sales; that the complainant, as purchaser and as executor, be relieved from having to account for the proceeds of the foreclosure sales in any manner, except as provided in said decree; and that the legatees be each restrained from attempting to make complaint, as purchaser or as executor, or McDonald as executor, account for the proceeds of such foreclosure sales, except as provided in that decree. There was a sale of the premises under said decree, on August 11, 1902, and Mrs. Fraser purchased the premises at said sale for $10,600. The sale was confirmed, and Grace Fraser, as one of the executors, receipted to the master for $8,955.30 as the net proceeds of the sale, after deducting the court costs and expenses of the sale, and after also deducting $1400 paid by the master to Grace Fraser, namely $800 for repairs and improvements made by her, $200 for taxes paid by her and $400 for expenses of the foreclosure paid by her.

On November 20, 1902, certain legatees sued out a writ of error from this court to review said decree. On November 28, 1902, eight days after said writ of error was sued out the executors filed their final report in the Probate Court, in which they set out the fact that in their former report of August 30, 1898,

they had charged themselves with $25,986 as received from the foreclosure sales, and set out the decree of the Circuit Court in the chancery proceeding begun by Mrs Fraser, whereby they were relieved from accounting for the proceeds of said foreclosure sales, and in lieu thereof were to account only for the proceeds of said second sale, at which the premises were sold for $10,600 and the net proceeds of which receipted for by the executors amounted to $8,955.30 with which amount they, by said report, charged themselves. Concerning said decree, they stated in said report, "Which decree is now in full force and effect, and no appeal has been taken therefrom." That report was approved on that date, and a distribution ordered on that basis. On October 8, 1903, this court rendered the decision reported in 110 Ill. App. 619 dismissing the writ of error for want of necessary parties. Two or three days later, on October 12 or 13, 1903, the Probate Court approved a final report of distribution. Thereafter certain legatees obtained leave to withdraw from this court the former record, and sued out another writ of error, and on October 27, 1903, obtained a severance of plaintiffs in error, and leave to assign errors separately upon the record, and obtained a *scire facias* for Grace Fraser and for their co-plaintiffs in error, and afterwards brought all parties in interest before the court, in the manner provided by law. In that cause, on July 7, 1906, we filed the opinion reported in 128 Ill. App. 73, wherein we reversed the decree in equity relieving Mrs. Fraser from her bid at the foreclosure sales, and remanded the cause to the court below, with directions to vacate the orders approving the master's sale and distribution under said decree, and to dismiss the bill for want of equity. The grounds of that decision were that the mistake she set up was one of law, and not of fact; that she was not led into the error by any fraud, undue influence, or any action or representation of any party in interest, and that equity would not relieve

her against the mistake of law; and also that she had not offered to put the parties *in statu quo,* and had not made parties to her bill the various owners of lots in Sadler's subdivision of said real estate, who were parties defendant in the foreclosure suits, and also for other reasons stated in that opinion. Thereafter on August 21, 1906, the present proceeding was begun in the Probate Court to charge the executors with the amount received by them from the foreclosures, which, as already stated, resulted in an order in the Probate Court sustaining the main contentions of the legatees, and in an appeal therefrom by Mrs. Fraser to the Circuit Court, where her contentions were sustained, and the petition was dismissed, which latter order is now before this court for review.

SIMMONS, MITCHELL & IRVING, for appellants.

FISHER & MANN and JOHN MURPHY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellants contend that the executors, in the final report of November 28, 1902, committed a fraud upon the court when they therein stated, as to said decree of June 30, 1902, in the chancery suit to relieve the executors from accounting for the proceeds of the foreclosure sales, "which decree is now in full force and effect, and no appeal has been taken therefrom", when in fact certain legatees had, eight days before, sued out a writ of error from this court to review said decree. While it may well be that perfect candor would have been better observed by the executors if they had also stated that a writ of error had just been sued out to review said decree in equity, yet we are of opinion that the charges of fraud in that respect are not sustained. It was strictly and literally true that the decree was in full force and effect, and that no appeal had been taken therefrom. The legatees who sued out

that first writ of error did not cause the same to be made a *supersedeas,* and it therefore did not interfere with the force and validity of the decree at that time. Moreover if the executors had undertaken to state everything concerning that writ of error, they must also have stated that the proper persons had not been made parties to that proceeding in error, and that the writ of error would be dismissed. Moreover, the Probate Court having before it in that report the date of the decree in equity, could not fail to know as a matter of law, that a writ of error could be sued out to reverse said decree within five years after the rendition of the decree. There was nothing in the final report to indicate that such a writ of error would not be prosecuted. The fact that the distribution of the estate under that final report, and the order approving that distribution and closing the estate, was not made until three days after that writ of error was dismissed, tends to show that either the executors or the Probate Court, or both, had in view the pendency of that writ of error, and did not intend that the estate should be finally closed until the writ of error was disposed of. None of the other elements of fraud authorizing the setting aside of an order closing an estate are shown, and we are of opinion that the petition could not be maintained on the ground of fraud.

But there is also set forth in the second amended petition such a statement of all the facts as to raise the question whether, when that decree had afterwards been reversed under a subsequent writ of error, and it had been therein adjudged, in a proceeding binding upon all the parties that the executors were chargeable with the proceeds of the first sale, the prior approval of the final report of November 28, 1902, would operate as a bar to the distribution of that portion of the proceeds of the foreclosure sale which had not been distributed. When, in 1902, the Probate Court was applied to to settle this estate on the basis of said

decree in equity, the legatees could not then have interposed a successful defense in the Probate Court. It would not have been a defense that they had a right to prosecute a writ of error within five years. The Probate Court would not have been justified in refusing to act on the report for five years. Moreover, by the decree then still in full force, the legatees were enjoined from attempting to make Mrs. Fraser or the executors account for the amount of the foreclosure sales, and Mrs. Fraser cannot now be heard to say that the injunction she so obtained was void, and that the legatees should have violated it, and should be barred now because they obeyed it. While they could have prevented this action of the Probate Court by appealing from the decree entered against them upon non-resident service, or by suing out a sufficient writ of error and obtaining a *supersedeas,* yet the law did not require them to do either, but they were given by law the right to sue out a writ of error within five years, without seeking a *supersedeas.* The attorney for some of the appellants, and who now appears to be attorney for all of them, visited the county seat, and saw that report before it was approved, but he did not then have a defense to interpose, and his clients were enjoined from interposing the only defense of which they could otherwise have availed themselves. But afterwards, upon a second writ of error, it was determined that Mrs. Fraser was not entitled to be relieved from her bids at the foreclosure sales. The parties defeated upon that second writ of error did not cause our judgment to be reviewed by the Supreme Court, and till they do so it stands as a final adjudication, binding upon all the parties to this proceeding. It therefore results that upon the rendition of our decision, on July 17, 1906, upon the second writ of error, the executors then became liable for the difference between the net results of the foreclosure sales and the net results of the second sale, distributed under the report of November 28, 1902. In other

words, a sum exceeding ten thousand dollars had become the property of the estate, after the report of November 28, 1902, was approved, and after the sum therein named was distributed, and the estate declared closed.

It is claimed by appellees that the order approving the final report of November 28, 1902, and the order of October 13, 1903, approving the distribution thereunder, and closing the estate, were final, and are a bar to this proceeding. We are of opinion that they were final as to the sums then distributed, but we feel required, by Diversey v. Johnson, 93 Ill. 547, and Starr v. Willoughby, 218 Ill. 485, and other cases there cited, to hold that as to that portion of the estate which became available by virtue of the decision of this court in 1906, the order closing the estate in 1903 was not final, but was void. It was held, in the case last cited, that an order of the County Court discharging an administrator or executor on a final accounting, when in fact the estate is not fully settled, is void as to the unsettled part of the estate. The quotations there made from Woerner's American Law of Administration seem to us pertinent to the matter now in hand. It is there said that an order of discharge made by the Probate Court is a discharge only so far as the particular matters appearing upon the face of the account are concerned, and that the formal discharge on a final accounting operates only as to the accounts of the parties up to that period; that other assets may be realized, and new liabilities incurred, involving a continuance of duty and responsibility. It is argued here that inasmuch as the report of November 28, 1902, stated all the facts then existing concerning the result of the foreclosure sales and the release therefrom by the decree of the court of equity, therefore the order closing the estate and discharging the executors was final as to all such matters. Conceding that to be partially true, it was not in the power of the Probate Court to cut off the right of the legatees

to a writ of error in the chancery proceeding, nor to deprive the legatees of any of the results of any reversal of that decree which they might thereafter obtain on a writ of error within the time fixed by law. The effect of reversing the decree of June 30, 1902, was to abrogate that decree, and restore the parties to the litigation to their original rights. A party to a suit cannot acquire any rights based on an erroneous decree that will not be abrogated by a subsequent reversal thereof. If he has received benefits from the erroneous decree, he must, after its reversal, make restitution. Ure v. Ure, 223 Ill. 454. The reversal of that decree and the judgment that Mrs. Fraser was not entitled to be relieved from her bids at the foreclosure sales, and that the executors were not entitled to be relieved from the report of 1898, wherein they charged themselves with the results of those sales, was a new fact, occurring long after the estate was declared closed, and which, standing as it now does as a final adjudication between the parties, determined, long after the approval of that final report of 1902 and the distribution thereunder that there was still over ten thousand dollars of assets belonging to this estate. To hold that those orders approving the report of November 30, 1902, and approving the distribution thereunder and closing the estate, are a bar to the present proceedings, would be to hold that the Probate Court by proceeding at that time, had power to deprive the legatees of their statutory right to a writ of error in the chancery cause within five years. We are of opinion that the Probate Court was required, under the second amended petition, to re-assume jurisdiction of the estate, and to distribute this additional sum.

We are of opinion that the circumstances of this case do not warrant the imposition of interest at ten per cent per annum upon the executors under section 114 of chapter 3 of the revised statutes relating to the administration of estates. That was intended as

a penalty, and to make it unprofitable for executors and administrators to hold the funds of an estate in their hands, and to use them in their own business for their own benefit instead of distributing such funds to those entitled thereto. Here these executors did not have any funds in their own possession. Mrs. Fraser bought the land at the foreclosure sales, and the executors charged themselves with the price at which she bought as if they had received the money, but they had in fact received no money, and she only had the land. She bid for this land more than double what it was worth. The legatees and heirs get the benefit of this double bid, and she loses correspondingly, and practically sacrifices her half of the estate for their benefit by reason of that bid. Since she discovered the mistake of her legal advisers she has been earnestly contending for relief against that mistake. As she is to be charged for one half of a large sum which she never actually received either in money or value of property, it does not seem equitable that she should also be charged with interest at ten per cent thereon. Courts of probate act upon equitable principles in the settlement of estates. We regard interest at five per cent per annum as a proper charge against her. The estate should be settled on the basis of the report of August 30, 1898, so far as that can be done consistently with treating the report of November 28, 1902, and the approval of the report of final distribution on October 13, 1903, as final so far as it distributed the estate. The decree of June 30, 1902, had found that Mrs. Fraser had laid out in improvements and repairs on said real estate $800 and paid out in taxes thereon $200 in excess of the amount she had received as rent for said premises, and had directed the master, out of the proceeds of that second sale to pay to her said sums of $800 and $200, and also to pay her the sum of $400 which the decree found she had paid out as expenses in the original foreclosure proceedings; and the master did pay her those

sums, and she accounted as executrix in her second
report of November 28, 1902, only for the net sum
received by her from the master under said sale, to-
wit: the sum of $8,955.30. When that decree was
reversed the allowance therein to Mrs. Fraser of $800
and $200 and $400, in all $1,400, was also reversed.
As she is required by this decision to keep the land
under the purchase in 1898, she is not entitled to any
allowance from the estate for improvements or re-
pairs or taxes which she afterwards paid thereon.
We think the court must have power in this proceed-
ing to cause the allowance to her of $800 and $200 in
the chancery decree to be eliminated. The expenses
of foreclosure had already been charged in the report
of August 30, 1898, and should be allowed as of that
date. We conclude, however, that the allowance to the
executors of attorneys' fees and commissions in the
report of November 28, 1902, must be considered as
final, after the approval of that report and the ap-
proval of the subsequent distribution thereunder. In
that report of final distribution, approved October 13,
1903, Mrs. Fraser, as executrix, had credit not only
for paying to herself the balance due on her widow's
award and the amount of a certain other claim which
had been allowed her against the estate, but also for
interest thereon from the date of said respective
allowances to December, 1902. We are of opinion that
the court has power in this proceeding to expunge the
allowance of that interest, and that it is equitable to
do so. No money was paid to her on those allowances.
It was a mere matter of book-keeping. We are of
opinion that the widow's award and the claim should
be treated as paid to Mrs. Fraser in the manner set
forth in her report of August 30, 1898, wherein she
credited herself with both of said matters as paid in
full at amounts named in that report. Mrs. Fraser
should be allowed no other or further commission or
attorney's fees except such sum as may be reasonably
necessary to prepare and procure the approval of a

final report in accordance with this opinion, and to distribute to the legatees the sums still payable to them. After deducting these allowances the remainder of the estate should be divided into two parts as of August 30, 1898, and Mrs. Fraser should be credited with one-half thereof as paid to her at that time as her inherited share of the real estate and personal estate, she having renounced the will. The balance should be treated as payable to the legatees. She should be charged with interest at five per cent per annum upon the one-half not inherited by her to the time she made distribution, which seems to have been in the first part of 1903. From the sums then due the legatees should be deducted the sums paid to the legatees and approved on October 13, 1903. Interest should then be charged against the executrix upon the balance of the unpaid principal of the fund at five per cent per annum to the date of the filing of the final report pursuant to the directions of this opinion. The legatees may be allowed interest upon their legacies at five per cent per annum from November 30, 1898 (see authorities cited in article entitled "Do Legacies Bear Interest in Illinois", in 2 Illinois Law Review 440), but the legatees can be paid no interest except out of that one-half of the estate which does not belong to the widow.

It is argued that it will work a hardship upon Mrs. Fraser to be compelled to make good the price at which she purchased this property at the foreclosure sales. The appeal to our sympathies is mainly based upon statements as to her financial condition, made by her attorneys outside the record. We recognize that it is a hardship, and we have in this opinion provided for giving her everything to which we think she can reasonably be entitled. We are as much bound as she is by our decision in 128 Ill. App. 73. If that decision is unsound, she should cause it to be reviewed by the Supreme Court. We must treat it, as it now stands, as a final adjudication upon the subjects covered

thereby. We consider that the legatees have a right to demand that we enforce that decision. In considering the hardship to Mrs. Fraser it is to be remembered that her bill in equity shows that when she bought the property at the foreclosure sales, she well knew that she was bidding more than double its value, and that she made that excessive bid in order to deter each owner of one or more lots in Sadler's subdivision of the land from seeking to redeem from the sale of his lot or lots. Her high bid may have worked a great hardship to other lot owners. When she filed her bill to be relieved from her purchases, she did not make these lot owners parties, so that upon the re-sale, their rights of redemption might be restored to them. If she or her legal advisers had not devised this scheme to cut out the owners of small interests by bidding more than double the true value of the property, she would not be in the unfortunate position she now occupies. It should also be noted that the foreclosure sale was in April, 1897, and that Mrs. Fraser's bill to be relieved therefrom was filed in April, 1902, and that she delayed five years before seeking relief, during all which time, however, she failed to distribute the proceeds of the sales, and to close the estate. She alleges in her bill that it was not till about six months before she filed it that she learned that she was entitled to but one-half of the personal estate left by her husband. If so, it is singular that for four and one-half years after the foreclosure sales and before she discovered what the law was, she did not cause the estate to be closed. It would establish a very dangerous precedent, to permit one who has bought land at a judicial sale, and paid for it and obtained a deed, to file a bill five years later, and be relieved from the purchase on the sole ground that when he, knowingly and intentionally, paid more than twice its value in order to cut off the rights of other parties, he had been incorrectly advised as to the law by his own attorney.

The order of the Circuit Court is reversed, and the cause is remanded to that court with directions to enter an order in conformity with this opinion.

*Reversed and remanded with directions.*

MR. JUSTICE WILLIS took no part in the consideration of this case.