LOUIE A. FENTON *et al.* Appellants, *vs.* JULIAN H. HALL *et al.* Appellees.

*Opinion filed October 26, 1908.*

1. WILLS—*what amounts to a devise of real estate to executor.* A provision in a will authorizing and directing the executor to convert into cash all the property, both real and personal, and to sell the same at public or private sale and distribute the proceeds as directed by the will, amounts to a devise of the real estate to the executor.

2. SAME—*when duty as executor ends and duty as trustee begins.* Where the same person is executor and trustee the relations are distinct and he does not take a fund as trustee until it is separated from the general funds in his hands as executor, but when his duties concerning a fund as executor are completed his duties as trustee begin, and no formal order of transfer from the executor to the trustee is necessary to enable the *cestui que trust* to claim and enforce his rights.

3. SAME—*what does not postpone right to income for five years.* A provision in a will directing that the executor, who was also trustee, complete all collections, sales and distributions within five years from the date of letters testamentary, (moneys in trust not included,) does not postpone the settlement of the estate for five years nor authorize the executor to take that time unless necessary, and does not indicate an intention that beneficiaries of bequests for life, in trust, shall receive no income from the funds until the end of such five years.

APPEAL from the Circuit Court of Menard county; the Hon. GUY R. WILLIAMS, Judge, presiding.

FRANK E. BLANE, and H. R. HALL, for appellants.

JOHN M. SMOOT, (guardian *ad litem,*) for minor appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

John Tice died at his home in Petersburg, Menard county, on November 22, 1904, leaving a last will and testament, which was admitted to probate on January 22, 1905.

He left no widow, child, descendant, father or mother, and his heirs-at-law were his brother, Anderson W. Tice; his sister, Amanda J. Bryan, one of the appellants; four children of his deceased sister, Mary A. Walters; and Louie A. Fenton, the other appellant, the only child of a deceased brother, James C. Tice. The will bears date July 2, 1904, and its first provision is as follows:

"It is my will that my executor, hereinafter named, will reduce and convert into cash all my personal property, both real and personal. He may sell same at public or private sale, without enabling order of court, at times and upon such terms as in his judgment he may deem best for my estate, such sales to be for best prices obtainable and subject to the approval of the probate court. He will complete all collections and sales and distributions within five years from date of his letters testamentary (moneys in trust not included.) When deemed best he may extend time within said five year period to my debtors on their notes, collecting and accounting for all interest and endeavoring to keep all money at interest till finally paid out. All the proceeds of my estate, including cash on hand and what may be realized as above and from all other sources, shall be divided, paid out and distributed as follows and as promptly as he may find practicable."

This was followed by the first clause, which provided that just debts and funeral expenses and costs of administration should be paid out of the general fund. By the second, seventh, eighth, ninth and tenth clauses he gave various legacies to the nephews and nieces of his deceased wife, and devised a life estate in town lots in Petersburg to one of the nieces and made bequests for various charitable and religious purposes. By the eleventh clause he directed that his executor should hold his bank stock and receive the dividends until it should be sold, and at some time before the term of five years mentioned in the introduction should elapse, should sell the same and add the pro-

ceeds to the general fund. By the third clause he gave to his brother, Anderson W. Tice, to be held in trust for him during his life by the executor, $6000, less any debt said brother might owe him, the principal sum to be held in trust by the executor, after the brother's death, for the brother's wife, Susan C. Tice, during her life, with the right of the survivor of the two to bequeath the same by will, and if the survivor should die intestate, the principal was to go to the heirs of their joint bodies. By the fifth clause he gave to the children of his deceased sister, Mary A. Walters, $6000. The fourth, sixth and twelfth clauses, which are directly involved in this suit, are as follows:

"*Fourth*—To my sister, Amanda J. Bryan, I give and bequeath, to be held in trust for her during her natural life by my executor, the sum of six thousand dollars, ($6000,) and at her death the same to go in fee simple to the heirs of her body, if any be living.

"*Sixth*—To Louie A. Fenton, daughter of my deceased brother, James C. Tice, I give and bequeath, to be held in trust for her during her natural life by my executor, the sum of four thousand dollars, ($4000,) less any debt she may owe me, which debt shall be deducted from said $4000, and at her death the principal sum will go in fee to the heirs of her body.

"*Twelfth*—It is my will that all the balance of my estate remaining after the payments hereinbefore directed, and after the payment and setting apart for investment of the particular legacies hereinbefore made, be and the same is hereby given and bequeathed on terms and conditions as follows: Six twenty-seconds (6-22) part thereof given and added to the six thousand dollars ($6000) hereinbefore given my brother, Anderson, and wife and children; six twenty-seconds (6-22) part likewise given and added to the six thousand dollars ($6000) given my sister, Amanda J. Bryan, and children; and six twenty-seconds (6-22) part likewise given and added to the six thousand dollars

($6000) given to the children of my deceased sister, Mary A. Walters; and four twenty-seconds (4-22) part likewise given and added to the four thousand dollars ($4000) given herein to Louie A. Fenton and her children. All said additions are bequeathed under exactly same conditions and qualifications as particularly and respectively attached to each of said four foregoing bequests. These shall be added to the above general balance for final distribution and become a part thereof, the sum of any legacies or bequests herein that may lapse by reason of death or revert to my estate, or belong to or remain in my estate from any source or cause, and same be distributed accordingly as directed in said foregoing bequests."

Julian H. Hall, one of the appellees, was appointed the executor of the will and also trustee to carry out the trusts created thereby. The executor was directed to report all funds held in trust to the probate court of Menard county as to amounts and dates, and to loan the same on good real estate security in said county, farm lands preferred, and to collect the interest and pay it over annually to the legatees at fixed dates. He was authorized to loan the funds *en masse* and apportion the interest to each legatee in accordance with the intention of the will.

The estate amounted to about $82,000, and consisted of a homestead and town lots in Petersburg, thirty-five acres of farm land, one hundred shares of bank stock of the market value of $25,000, notes secured by real estate mortgages $34,615, other notes $7764, cash in bank $6608, an interest bearing certificate of purchase $1600, and some other assets. On May 10, 1907, the executor had collected and converted into money, assets amounting to $43,506.96, and had received interest and income from real estate and dividends on bank stock to the amount of $6500. He had converted into money all of the property except the one hundred shares of bank stock, the farm land and notes and accounts amounting to about $10,000, and had paid all

debts, claims against the estate, accrued costs of administration, and all the legacies except the $6000 to Anderson
W. Tice, $6000 to the appellant Amanda J. Bryan, $4000
to the appellant Louie A. Fenton and $500 to one of the
nieces. The executor declined to pay the income of their
legacies to appellants, believing that they were not entitled
to receive any income until after the final settlement of the
estate, which might be five years after the date of his letters testamentary, when his final account should be settled
and approved by the court and a distribution of the estate
be ordered. Appellants, insisting that they were entitled to
the income from the specific sums given them by the will,
filed their bill in the circuit court of Menard county in this
case against the appellees, Julian H. Hall, executor and testamentary trustee, and the other parties interested, including ten minor children of the appellant Louie A. Fenton.
By their bill they asked the court to construe the will and
to hold that it was not operative to devise the farm land,
and that they were entitled to interest on the pecuniary legacies and to their proportionate shares of interest and income
which had accrued and been collected from the residuary
estate since the death of the testator. The executor answered, admitting the facts alleged in the bill, and alleging
that he was ready and willing to pay to the complainants,
under the direction of the court, such sums as the court
might, upon construing said will, order and decree. The
other adult defendants were defaulted. A guardian *ad litem* was appointed for the infant defendants, children of
Louie A. Fenton, and answered, denying the right of complainants to the income from any portion of the funds of
the estate until after a final settlement, when the executor
would turn over the property to himself, as trustee. Upon a
hearing the court sustained the position of the guardian *ad
litem* and entered a decree construing the will accordingly.

It is first contended that the court erred in holding that
the testator by his will devised his real estate, and it is

claimed that the complainants are entitled, as heirs-at-law, to their respective shares of the thirty-five acres of farm land and to the rents and profits thereof received by the executor. The executor was authorized and directed to convert into cash all the property, both real and personal, and to sell the same at public or private sale and distribute the proceeds as directed by the will. This amounted to a devise of the real estate to him.

The principal controversy is between the life tenants and remainder-men, and it is to be settled by ascertaining the intention of the testator upon a consideration of the entire will and the circumstances surrounding him at the time it was made. (*Ingraham* v. *Ingraham,* 169 Ill. 432; *Johnson* v. *Askey,* 190 id. 58.) General rules are framed as aids to ascertaining and executing the intention of the testator, and when that intention is ascertained it is to be carried out unless it conflicts with some established rule of law. It is, of course, true, that where the same person is executor and trustee his duties in the two relations are separate and distinct and he does not take a fund as trustee until it is separated from the general funds in his hands as executor, but when his duties concerning a fund as executor are completed and his duties as trustee begin, it becomes his duty to hold the fund as trustee, and a court of equity will regard that as done which ought to be done. Under that rule no formal order of transfer from the executor to the trustee is necessary to enable the *cestui que trust* to claim and enforce his rights. The testator would have had a right to postpone, by his will, the time when interest on the legacies in question should begin, but he did not do so, either in direct language or by necessary implication.

It is argued that such an intention is shown by giving the executor five years to finally complete his duties as such; but the provision did not postpone the settlement of the estate or authorize the executor to take that time unless necessary. The testator required his executor to complete all

collections and sales and distributions within five years, but provided that the proceeds of the estate should be divided, paid out and distributed as promptly as the executor might find practicable. The condition of the estate throws much light both upon the provision in question and the intention of the testator. The larger part of the estate consisted of notes secured by real estate mortgages, which would come due at various times from September, 1907, to February, 1909. They were producing income and the bank stock was paying large dividends. The bulk of the estate was already invested in the same manner in which the executor was expressly authorized to invest it under the trust provisions, and he was merely permitted to allow the same to remain so invested for the period of five years from the date of the letters. That would postpone the final settlement and the distribution of the residuary estate for a considerable period, and furnishes a good reason for making some immediate provision for the brother and sister of the testator and the children of his deceased brother and sister. By the third, fourth, fifth and sixth clauses he gave them $22,000 to be immediately available, giving six twenty-seconds of that sum in trust for his brother, the same proportion in trust for his sister, the appellant Amanda J. Bryan, the same proportion absolutely to the children of his deceased sister, Mary A. Walters, and four twenty-seconds in trust for the appellant Louie A. Fenton. By the twelfth clause he disposed of the residuary estate, maintaining the same proportions between the same parties and giving to each a portion to be added to the specific sum previously given. The intention manifested by the will was to give to the complainants certain specific sums of which they could receive the income and not be delayed until the final settlement of the estate, when the balance would be ascertained and the respective portions be added. If it had been the intention that the complainants should begin to enjoy the income from the specific sums of $4000 and $6000 at the

same time that they would begin to enjoy the income from the residue under the twelfth clause, no reason can be perceived why the provisions of the fourth and sixth clauses should have been made at all. No reason is suggested, and we know of none, why the gifts should have been separated, unless it was to enable the life tenants to have' the benefit of their legacies of $4000 and $6000 without waiting until the final settlement of the estate. While the executor is also named as trustee in the appointing clause at the end of the will, the testator did not designate him as trustee in other portions of the will and he was called executor all through the will. In the clauses particularly involved here, the legacies were to be held in trust by the executor, indicating an intention that they should be so held before the estate was finally closed. The legacies are not payable to the complainants and they are entitled only to the income, but it appears that the income actually produced was at least equal to the legal rate of interest claimed by the bill, which is all that was asked for.

A rule which is perhaps somewhat arbitrary but which has been generally adopted where no time has been fixed by the will for payment of a general legacy, is, that it is payable at the expiration of one year from the testator's death and draws interest from that time. (18 Am. & Eng. Ency. of Law,—2d ed.—p. 793.) The question whether that rule ought to be adopted by this court in case of such a legacy is not involved in this case and is not decided, but it is quite clear that its application, under the facts of this case, would be entirely just and fair to the remainder-men. The moneys of the estate were invested in such a way as to produce income, and there is no reason why the complainants should not receive such income from the expiration of that period. By the bill they ask for the income at the legal rate of interest, and we think it should be awarded to them on their respective legacies of $4000 and $6000.

As to the residuary estate, our conclusion is that complainants are not entitled to interest and will not be until the final settlement of the estate, when the amounts to be taken and held by the trustee and added to the specific sums previously given will be ascertained. The court should direct the executor to invest the sums given to the complainants by the fourth and sixth clauses and to pay the income therefrom to the complainants.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*