(No. 20667.— )
THE STATE BANK OF CHICAGO, Exr., Plaintiff in Error, *vs.* WILHELMINA GROSS, Defendant in Error.

*Opinion filed June 18, 1931.*

HELMER, MOULTON, WHITMAN & HOLTON, (ROLAND D. WHITMAN, of counsel,) for plaintiff in error.

THOMAS G. DEERING, and WEST & ECKHART, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

By the sixth section of the will of Minnie Schmidt the testatrix created a $25,000 trust for her grand-daughter, Wilhelmina Gross, defendant in error. The testatrix there directed her executor, the State Bank of Chicago, plaintiff in error, to pay this sum of money to the State Bank of Chicago as trustee, "to have and to hold the same upon the trust and for the uses and purposes hereinabove expressed." After authorizing the trustee to invest and re-invest the trust funds, the paragraph in question provides: "After paying all necessary and proper expenses incurred by said trustee in the care and management of said trust fund, I direct said trustee to pay the net income from said trust fund to my grand-daughter, Wilhelmina Gross, in convenient installments to be determined by said trustee, commencing at my death and continuing until January 2, 1935." Minnie Schmidt died April 9, 1925, and her will

was duly admitted to probate and record in the probate court of Cook county on May 12, 1925. On the same day the executor qualified. On April 9, 1926, Wilhelmina Gross filed her bill to contest the will, alleging that the testatrix was without testamentary capacity, but on November 26, 1927, she dismissed her bill. The final account of the executor was filed on April 12, 1928, to which an objection was filed by Wilhelmina Gross, claiming that the $25,000 trust fund should bear interest from April 9, 1925, the date testatrix died, to December 19, 1927, the date when the executor made payment to itself, as trustee. By stipulation of the parties it is agreed that the securities left by testatrix were in excess of the $25,000 required to be paid over by the executor to the trustee. The objection of the grand-daughter was sustained in the probate and circuit courts of Cook county, and, with slight modification, by the Appellate Court for the First District, all of which held that income from the *corpus* of the trust was payable under the express terms of the will, commencing at the death of testatrix. By writ of *certiorari* the executor has brought the case here for review.

The chief questions for determination are whether the $25,000 was payable by the executor to the trustee at the date of the death of testatrix or one year from that date, or whether the action of Wilhelmina Gross in filing her bill to contest the will warranted the executor in further postponing the payment of the $25,000 to the trustee. In either of these events the executor contends that the $25,000 should not bear interest.

General pecuniary legacies draw interest from the time they are due and payable. This has been the law of England for over two centuries. That this rule has been generally adopted in the United States is shown by the decisions of courts of last resort in Massachusetts, New York, New Jersey, Pennsylvania, Ohio, Indiana, Iowa and many other jurisdictions. This law is so generally accepted that

the citation of numerous authorities is needless. The allowance of interest on legacies from the time when they are regarded as payable is said to have been borrowed by the English chancery courts from the practice in the ecclesiastical courts. (*Woodward's Estate* v. *Holton*, 78 Vt. 254, 62 Atl. 718.) It appears, however, to have been a general rule of law applicable whenever and in whatever court a legatee might claim or sue for a legacy. (*Hamilton* v. *McQuillen*, 82 Me. 204.) The rule, therefore, which allowed interest on pecuniary legacies from the time they are due and payable, was undoubtedly the rule of the common law of England within the meaning of our statute, which makes that law the rule of decision in this State.

It is not so much that there has been improper delay in payment but rather that the testator intends the legatee, as part of the legacy, to have the value of the use of the money, which has influenced the courts to adopt the rule giving interest on legacies. It has thus become a rule of construction that the unconditional gift of a general pecuniary legacy is a gift of both principal and interest, and that the interest is given not as a penalty for the executor's negligence but as an incident and accretion to the legacy itself. (*Kent* v. *Dunham*, 106 Mass. 586; *Esmond* v. *Brown*, 18 R. I. 48; *Davison* v. *Rake*, 44 N. J. Eq. 506.) The residuary legatee is postponed until specific legacies are paid, and the loss which he suffers, it is said, is no more than the testator expressly provided for by preferring the general pecuniary legatees to the residuary legatees. (*Sloan's Appeal,* 168 Pa. St. 422.) Furthermore, the rule allowing interest is by no means as harsh on the residuary legatee as might at first appear, for whenever long delays occur in the collection of assets in the form of securities for money they usually bear interest. In England, as well as in most of the American jurisdictions, the rule is well established that, unless the will clearly expresses a contrary intent, a general pecuniary legacy is regarded as due and

payable one year from the testator's death and draws inter-
est from such time. (*Fenton* v. *Hall,* 235 Ill. 552.) It
therefore must be first determined whether the language
used was clear and specific enough to take the legacy in
question out of the general rule.

Our first duty is to ascertain and give effect to the in-
tention expressed by the testatrix in her will. By the sec-
tion referred to she directed the trustee "to pay the net in-
come from said trust fund * * * commencing at my
death." This language is plain and unambiguous and needs
no construction. The general rule requiring the payment of
interest on pecuniary legacies one year after the death of
the testator has no application where the will clearly fixes
a different time when such payment shall begin. (40 Cyc.
1800; *Davis* v. *Brown,* 112 Wash. 121; *Blair* v. *Blair,*
122 Me. 500; *Bishop* v. *Bishop,* 81 Conn. 509; *Edwards*
v. *Edwards,* 183 Mass. 581; *Poole* v. *Union Trust Co.* 191
Mich. 162.) Where the will fixes the time for payment
of interest or income it is controlling. (28 R. C. L. 353,
354, and cases cited.) Any construction which in effect
would postpone the payment of this income would be in
conflict with the primary meaning of the language used by
the testatrix, which no facts or circumstances should be
allowed to change.

It is argued by plaintiff in error that the clause of the
will under consideration is an express direction to the trus-
tee but that it is neither an express nor an implied direc-
tion to the executor. This position cannot be sustained.
The clear intention expressed in the will must govern, and
all persons, whether executors, trustees, legatees or other
parties interested, are bound by its directions. The usual
excuse found in cases where payment of legacies has been
postponed is that the assets out of which the legacy must
be paid were not and could not be collected until long after
a year from the testator's death. This excuse has always
failed. (*Kent* v. *Dunham, supra; Marsh* v. *Hague,* 1 Edw.

Ch. (N. Y.) 174; *Miller* v. *Sanford,* 31 N. J. Eq. 427; *Koon & Wight's Appeal,* 113 Pa. St. 621; *Eichelberger's Estate,* 170 Pa. St. 242; *Gray* v. *Case School,* 62 Ohio St. 1.) It is equally no excuse that probate was delayed until long after the testator's death—*Ogden* v. *Pattee,* 149 Mass. 82; or that the legatee died within one year after the testator's death, so there was no one who could receive the legacy—*Esmond* v. *Brown, supra; Lyons* v. *Magognos,* 7 Gratt. 377; or that the legatee disappeared and could not be found—*Miles' Estate,* 12 Pa. Co. Ct. 383; or that the legatee, being a non-resident, was not in position to receive the legacy—*Marsh* v. *Hague, supra;* or where the delay was due to the fact that the testator himself allowed further time for the settling of the estate—*Spencer, Petitioner,* 16 R. I. 25; *Warwick* v. *Ely,* 59 N. J. Eq. 44, 44 Atl. 666; or where no demand was made by the legatee—*Hamilton* v. *McQuillen, supra; Kent* v. *Dunham, supra; Ogden* v. *Pattee, supra.* The sixth clause of the will of Minnie Schmidt contains an express direction to the executor to pay the sum of $25,000 to the trustee, coupled with a further direction that the trustee pay the net income from such trust fund to her grand-daughter, "commencing at my death." The executor was therefore bound by these express directions to pay over this fund without delay, so that the beneficiary should commence to receive the income from the trust fund in the manner directed by the will. To come to any other conclusion would be to refute the will itself.

It is a well established principle of law that unless a contrary intention appears a beneficiary is entitled to the income from trust property from the testator's death. In 40 Cyc. 1800, the rule is thus stated: "The time of accrual of the right of beneficiaries to income or capital and the times at which payments are to be made depend, of course, upon the provisions of the will and the intention of the testator. Unless a contrary intent appears, where

a fund or property is devised or bequeathed in trust, the income to be paid to a beneficiary, the latter is entitled to it from the testator's death, such an intention on the part of the testator being presumed; but the will may expressly provide otherwise or the provisions as to the time and amounts of payment may show a contrary intention." In Thompson on Wills (sec. 347) it is said: "A pecuniary legacy for support and maintenance entitles the legatee to interest from the testator's death. Likewise, where the testator by will has given annuities, the annuities must be paid from the date of the testator's death unless a contrary intention appears. But the time of accrual of the right of beneficiaries to income and the time at which payments are to be made depend upon the provisions of the will and the testator's intention." Especially pertinent among the many cases cited in support of this rule is *In the matter of Bird,* 241 N. Y. 184, where the court said: "When is a trust created? The answer depends upon the intentions of the testator as expressed in his will; not upon the action or non-action of executor or trustee; not upon their caprice or diligence. It may be upon the testator's death. It is, if there is nothing to indicate a contrary design. Where a sum is left in trust, with the direction that the income be paid to A, then A is entitled to income from the death of testator. [Cases cited.] The trust certainly is created from the date when the *cestui* becomes entitled to its benefits. * * * We certainly did not hold or intend to hold that in all cases the date of the creation of the trust was fixed by the time the executors actually delivered the trust funds to the trustee, or, if executors and trustees were one, the time when they segregated the trust funds or made appropriate entries on their books."

To allow the contention of plaintiff in error in this case would be to enrich the residuary legatees by income from the trust fund which would not properly belong to the residuum of the estate. In *Webb* v. *Lines,* 77 Conn. 51,

a similar question was presented, where the testator gave to his trustee the sum of $120,000, to pay to his wife "the net income thereof during her life." One of the questions decided was from what date the income was payable. The court there in part said: "It is well settled in this State, as it is in many other jurisdictions, that 'where there is a bequest of the whole, or of an aliquot part, of the residue of an estate to a legatee for life, remainder over, and no time is fixed by the will for the commencement of such life use, the legatee is entitled to the use or income of the clear residue so bequeathed, as the same may at last be ascertained, to be computed from the death of the testator.' [Citing authorities.] * * * The principle invoked * * * is the well known one that general legacies do not, in the absence of a contrary testamentary direction, bear interest until one year from the death of the testator. This rule, however, it will be noticed, deals with interest which is given as compensation for the withholding of money and not with income earned. * * * When, however, it is sought to extend its application to gifts in trust, to pay income, only, to one during life or a term, so that the period of enjoyment shall be cut down one year, a radically different situation is encountered. Such bequests are in this essence, in so far as the life or term beneficiaries are concerned, bequests of income, only. When income earned is paid over nothing comes out of the *corpus* of the estate. What is paid can by no possibility be a charge upon the estate as the testator left it or serve to diminish it to the prejudice of anybody. A beneficiary of the income of a trust fund who claims the income actually earned during the first year is not seeking an accretion to that which was given him; he is seeking the very thing given. He is not seeking something in addition to his legacy; he is seeking his legacy. The testator has by the terms of his will given him the income of a fund definite in amount. If the testamentary intent is to be given its usual controlling weight

in construction, it is difficult to discover, from the language making an unrestricted bequest of the income of a fund, an intent that something less than the whole income should pass." With this we agree.

It is further urged by plaintiff in error that even if interest should be charged against the executor it should not begin to accrue upon this bequest until after the final disposition of the objector's bill to contest the will. But the fact that payment of the legacy is delayed by a contest of the will does not affect the right of the legatee to receive interest on the legacy from the time it is payable; (40 Cyc. 2104, and cases cited;) and it has been held that this rule applies although the legatees who claimed the interest opposed the will. (*Woodward's Estate* v. *Holton, supra; Kent* v. *Dunham, supra.*) There is no law which penalizes a legatee if he is unsuccessful in a will contest. He does not file a bill to contest a will at his peril unless some clear provision to that effect is found in the will itself. The executor has no authority to impose a penalty upon the legatee who sought a larger estate by a will contest, as he is powerless to change any of the directions of the will, which still remain in force.

In *Woodward's Estate* v. *Holton, supra,* the Supreme Court of Vermont held "that pecuniary legacies draw interest after one year from the death of the testator unless the will provides otherwise. This case cannot be made an exception on the ground that the contest which delayed the settlement of the estate was participated in by the legatees who are claiming the interest." In *Welch* v. *Adams,* 152 Mass. 74, 25 N. E. 34, in affirming an earlier Massachusetts decision in *Kent* v. *Dunham, supra,* the court held that the fact that the legatees had contested the will and embarrassed the executors in the settlement of the estate "was inadmissible for the purpose of defeating their claim to interest." This same doctrine has found expression in *O'Leary* v. *Smock,* 95 N. J. Eq. 276, *In re Brandon's Es-*

*tate,* 164 Wis. 387, 160 N. W. 177, and *Chaflin* v. *Holmes,* 202 Mass. 157, 88 N. E. 664.

The gift to Wilhelmina Gross of the income from the $25,000 trust fund, "commencing at my death," was an absolute provision of the will, and no court or representative of the testatrix has the power to change it where, as in this case, ample funds existed to create the trust. If the filing of a bill to contest or construe a will, or other litigation which executors sometimes institute or in which they become involved, can afford a basis for delaying or defeating payment of interest on specific cash legacies after they are due and payable, then encouragement will be given to those who might profit by such delays to involve estates in litigation. In our opinion the unsuccessful contest of the will did not relieve the executor of its obligation to pay interest on the trust fund from the death of the testatrix.

We have carefully considered all other points raised by plaintiff in error in its brief, but what we have said makes it unnecessary for us to discuss them at length. The will in this case is so specific in its language in directing the time when payments shall commence that most of the cases cited by plaintiff in error are not applicable, since the unmistakable language of the will must control. An attempt is made to distinguish between the word "income," used by the testatrix, and the word "interest," designating a penalty. No reason exists for any such distinction in the present case. Neither the executor nor the estate will suffer any penalty, because the record shows that almost all of the assets of the estate consisted of income-producing securities when the executor assumed control. The income which the testatrix wanted her grand-daughter to receive from the $25,000 was constantly accruing from these securities. This income, under the will, belongs to Wilhelmina Gross and not to the estate. Since no separate account of the income received from this fund was kept by

the executor, the court properly ruled that it should bear interest at the legal rate of five per cent.

The objection to the executor's account was properly sustained because interest on the $25,000 trust fund for a period of about two and one-half years after the death of testatrix was not included therein. The modification of the circuit court's judgment by which two tax items totaling $107.65 were deducted from the executor's account is sustained, in conformity with the opinion of the Appellate Court.

*Judgment affirmed.*