**In re Estate of Gus G. Eliopulos, Deceased.**
Andrew Kotsires and Peter Stamates, Executors of Last Will and Testament of Gus G. Eliopulos, Deceased, Appellants, v. Basilo Eliopulos et al., Appellees.

**Gen. No. 9,993.**

Opinion filed April 18, 1946.

Released for publication May 6, 1946.

SMITH & HYNDS, of Morris and D. PARRY, of Chicago, for appellants; WILLIAM I. HYNDS, of Morris, of counsel.

THOMAS B. DUNN, of Morris, for appellees.

PER CURIAM. Gus G. Eliopulos died testate on March 7, 1940 and on June 29, 1940 letters testamentary were issued to appellants as executors of his will. The testator bequeathed to his sister, Basilo Alemis, $2,000, to his sister Stamata Eliopulos, $2,000, to his brother Athanasios Eliopulos, $2,000, to his brother

William Eliopulos, $500 and the rest and residue of his property, real and personal to his nephews, the appellants herein.

Appellees on March 11, 1941 instituted a suit to contest this will which resulted on June 5, 1942 in a verdict and judgment sustaining the will. During the pendency of the will contest, appellees were sued in Cook county, and appellants executors were made parties thereto as garnishees. That action terminated in a $750 judgment for the plaintiff, on February 8, 1943 and that judgment was paid by the executors. On July 31, 1943 the executors filed their final report in the county court of Grundy county and on August 21, 1943 deposited to the credit of each appellee with the county treasurer of that county the sum of $1,750.

The final report showed that the executors had received $12 cash and $250 from the sale of an automobile of the testator or a total of $262 and had paid out for funeral expenses, inheritance tax and other claims and costs of administration $4,851.80. In addition to this amount the report disclosed that the executors had paid the garnishment judgment of $750; the special bequest of $500 to the conservator of the estate of Wm. Eliopulos and had deposited with the county treasurer for the benefit of each appellee the sum of $1,750 as stated. The report disclosed that the executors had each advanced $5,544.90 with which these judgments, claims and legacies were paid and each waived reimbursement of that amount and released the estate from any claim on account of advancing such sums inasmuch as they were the residuary legatees and devisees. To this final report appellees filed objections claiming interest on their respective legacies from March 30, 1941.

Upon the hearing it was stipulated that the income from the decedent's real estate from March 7, 1940 to August 15, 1943, received by appellants as residuary devisees and legatees, was $10,709.86, out of which they

paid operating expenses of $4,166.87; that at the time of the testator's death, and ever since, so far as it is known, appellees were and are residents of Greece and that since April 1941 when the German army occupied Greece, the forwarding of money from the United States to Greece has been prohibited by order of the President of the United States.

The county court awarded interest at 5 per cent to each legatee, interest being allowed at 5 per cent on $2,000 from March 30, 1941, to February 1, 1943 and interest at 5 per cent on $1,750 from February 1, 1943 to August 21, 1943. The reduction from $2,000 to $1,750 being occasioned by the payment by the executors of the judgment against the legatees in the garnishment proceeding as above indicated.

The executors appealed from the order of the county court to the circuit court, where the matter was again heard upon a stipulation of fact. A like judgment was entered by the circuit court and the executor's appeal. Appellants urge that the delay with respect to the payment of these legacies was occasioned wholly and entirely by acts of the legatees, and therefore they should not be entitled to interest during such period of delay. Appellees' position is that the only way interest upon their legacies can be defeated is to defeat the legacies and that the trial court correctly applied the rule in effect in this State.

 The common-law rule is that interest is payable on a general pecuniary legacy from the time when the same is due and payable until the time when payment is made. The terms of this will do not fix a time when these legacies are to be paid and in the absence of any time being so fixed the legacy is considered due and payable one year after the testator's death, when not otherwise controlled by statutory enactment. Such rule is well established in this State. (*State Bank of Chicago v. Gross,* 344 Ill. 512; *Fenton v. Hall,* 235 Ill. 552; *Fraser v. Fraser,* 149 Ill. App. 186; *Dreyfuss v. Freud,* 189 Ill. App. 417.)

 It is not so much that there has been improper delay in payment by the executors but rather that the testator intends the legatees, as part of the legacy, to have the value of the use of the money, which has influenced the courts to adopt the rule giving interest on legacies. It has thus become a rule of construction that an unconditional gift of a general pecuniary legacy is a gift of both principal and interest, and that the interest is not given as a penalty for the executor's negligence or delay, but as an incident and accretion to the legacy itself. The residuary legatee is postponed until specific legacies are paid, and the loss which he suffers is no more than the testator expressly provided for by preferring the general pecuniary legatees to the residuary legatees. (*State Bank of Chicago v. Gross,* 344 Ill. 512, 515, and cases cited.)

Not all jurisdictions have adopted the common-law rule regarding payment of interest on general pecuniary legacies and the various jurisdictions which do observe the rule are not in accord in its application. Some apply the rule in a fixed and arbitrary manner, holding that the rule is not affected by the condition of the estate, and that such legacy will bear interest after a year from the death of the testator even though there be delays occasioned by litigation and although the delay is caused from a suit by the legatee to contest the will. (Woerner—Law of Administration (3rd Ed.) vol. 3, sec. 459, p. 1578. Here will be found cited cases reported in the National Reporter System, which together with the Digest thereto, afford a ready reference to the jurisdictions observing the rule as well as those which do not observe it. Reference may also be had to Woerner, sec. 454, p. 1551, and to that portion of vol. 3 devoted to Interest on Legacy, beginning with sec. 458, on p. 1570.) Other jurisdiction observing the rule apply the same under equitable principles, holding that where the payment of the legacy has been delayed beyond the one-year period and payment rendered impossible by some act of the legatee, he is not

entitled to interest thereon during such period of delay. Courts so holding reason that a will contest is not to be deemed to have been in the mind of the testator when he made his will and that the testator must have anticipated his estate would be administered within the usual statutory period, and that when distribution is so made within such period, in the usual course, the legatee is only entitled to receive the amount of the bequest.

Appellants insist that the common-law rule was abrogated in this State by section 114 of the Administration Act of 1872 (Ill. Rev. Stat. 1874, ch. 3, par. 113, replaced by sec. 308 of the Probate Act of 1939, Ill. Rev. Stat. 1945, ch. 3, par. 462 [Jones Ill. Stats. Ann. 110.559]), and rely upon *In re Estate of Schofield*, 99 Ill. 513, and *Pillsbury v. Early*, 252 Ill. App. 620. These statutory provisions relate only to personal liability of administrators and executors to pay interest at 10 per cent per annum, for delay in distribution, on funds in their hands or control, after the expiration of a period of 2½ years, by the statute of 1872, and 2 years by the Act of 1939, from the issuance of their letters, an entirely different subject matter than that of the common-law rule, which deals with interest payable from the residuary estate as a part of the legacy itself. Another outstanding difference is that under the statute such a delay is excusable for good cause shown, but the common-law rule embraces no such element. In each of the two cases mentioned, relied upon by appellants, the recovery sought was from the executor or administrator personally, and neither of them tends to show that the common-law rule was abrogated by the statute invoked. Whatever may be the rule in other jurisdictions all of the authorities treat the common-law rule as still in effect in this State.

Appellants further urge that the suit by appellees to contest the will amounted to a refusal on their part to accept the legacies; that under such cir-

cumstances, no distribution could be made and that no order of court could have been obtained for a final distribution of the estate when the same was thus in litigation.

As above stated, the various jurisdictions that have adopted the common-law rule cannot be brought into accord on its application. One group holds interest payable regardless of the fact the delay was caused by the legatee. The other group holds that the question should be determined upon equitable principles, and that if the delay was caused by act of the legatee, interest should not be paid for the period of such delay, to the injury of a residuary legatee who was innocent of any fault. It would appear from the language used in *State Bank of Chicago v. Gross,* 344 Ill. 512, that this State has adopted the rule holding interest payable on a general pecuniary legacy from the time when the same is due and payable until the time payment is made, although the delay is caused by suit of the legatee to contest the will.

While the *Gross* case involved a trust fund which had earned income from the time of the testator's death, and the will contained an express provision that the income should be paid to the legatee "commencing at my death," the opinion holds that in the absence of any time fixed by the will for payment, a legacy is considered as due and payable one year after the testator's death, and draws interest from that time, and that there was no reason for the attempt by the executor to distinguish between income and interest.

The contention of appellants that because the testator left only $262 in personal property it would be necessary to sell some or all of the real estate in order to pay the legacies, and that the testator therefore did not intend the legacies should be paid until the real estate was sold, is not a defense to the right of appellees to recover interest on their legacies. There is nothing in the record which tends to show that the

testator contemplated that the real estate would not be sold within one year after his death. Furthermore, the *Gross* case holds that the usual excuse that assets out of which the legacy must be paid could not be collected until long after the testator's death, has always failed. This doctrine applies to any other delay in payment, such as the garnishment proceeding or the will contest, or because the net income from the real estate was not sufficient to pay the claims and the legacies.

■ The claim of appellants that appellees are not entitled to interest because they never applied to the court for a sale of the real estate, is likewise without merit. In the first place, such an application was the province of appellants, and not of appellees, and in the second place, the *Gross* case holds that a lack of demand by a legatee is not an excuse nor is it an excuse that some of these legatees are nonresidents and not in a position to receive their legacies.

■ While the value of the real estate which the testator owned, is now shown, the income therefrom does appear and the fact that appellants advanced sufficient to pay all claims and the legacies, saving the real estate to themselves as residuary legatees, demonstrates that the value is far in excess of the amount advanced by the executors so that the interest on the legacies will come, not from the executors as such, as is claimed by them, but will come from the residuary estate.

The judgment order appealed from is in accord with the authorities and must be affirmed.

*Judgment affirmed.*