2 Ill. App.3d 28 (1971)
275 N.E.2d 750
IN RE ESTATE OF SAMUEL FEDER, Deceased  (PAUL FEDER, Petitioner-Appellee,
v.
JULIAN J. LUSTER, Exr., Respondent-Appellant.)
No. 54560.
Illinois Appellate Court  First District.
October 6, 1971.
Nat M. Kahn, and Smith and Munson, all of Chicago, for Appellee.
Samuel S. Cohon, of Chicago, for Appellant.
Order affirmed.
Mr. JUSTICE BURMAN delivered the opinion of the court.
*29 This is an appeal from an order directing the Executor of the Estate of Samuel Feder to prepare and file a separate accounting for the rents, issues, profits, and avails collected by him from property commonly known as 615-621 Howard Street Evanston, Illinois, and to pay the monies on hand as shown in the accounting to Betty E. Feder, as trustee of four trusts for the benefit of her children.
Samuel Feder died testate on October 17, 1967, and by his Will executed on July 9, 1964, he devised and bequeathed (1) certain personal and household articles to his daughter if she survived him and (2) the residue and remainder of the estate to named trustees for the uses and purposes set forth in a testamentary trust. This trust was divided into two parts: Trust A included only the real estate commonly known as 615-621 Howard Street, Evanston, Illinois, and Trust B included all the rest and remainder of the property given to the trustees and not included in Trust A.
In a Codicil to the Will executed on October 12, 1967, Samuel Feder provided:
"I direct that upon my death my trustees convey the fee simple title of real estate described in Trust A as follows: * * *."
Thereafter followed instructions to convey the property in undivided fourths to Betty E. Feder, as trustee, under four already existing trust agreements. Each of these four trust agreements had one of Mrs. Feder's four children as its sole beneficiary, and each of the four trusts was to receive an undivided one-fourth interest in the Howard Street property.
Samuel Feder, at the time of his death was the sole beneficiary under a land trust which held title to the Howard Street property. After his death, the executor of his estate, Julian J. Luster, took possession of the Howard Street property and collected the rents which are the subject matter of this controversy.
On June 11, 1969, Paul Feder, a son and heir of Samuel Feder, filed a petition seeking an order compelling Julian J. Luster, as executor, to account to his wife, Betty E. Feder, as trustee, for the rents derived from the Howard Street property during the administration of the estate and to distribute to her all monies on hand as shown in the accounting. The Court, after considering the Petition, the Answer thereto, memoranda and arguments of counsel, entered an order and later an amended order granting the relief sought. When the amended order was entered on August 21, 1969, the estate was solvent, and the time for filing claims had long since passed.
The executor contends that since the testator's interest in the Howard Street property was bequeathed to the testamentary trustees and not directly to Betty E. Feder, as trustee, Mrs. Feder did not become entitled *30 to the income from the property until the testamentary trustees acquired title to the property and were able to convey that title to her. In response to this contention, it is argued that the direction to the testamentary trustees in the Codicil that they should convey title to the property "upon my death" constitutes a specific bequest of the property to Mrs. Feder, as trustee, and that as the recipient of the specific bequest, the rents never became a part of the testator's residuary estate and therefore, she is entitled to all the income derived from the property prior to distribution.
 1-4 The initial question presented is essentially one of construction. The principal object in the construction of wills and codicils is to ascertain the intention of the testator from the will and codicil as a whole and to effectuate that intention unless it is contrary to some established rule of law or public policy. (Davidson v. Davidson, 2 Ill.2d 197, 117 N.E.2d 769.) This intention is not determined from the language of any particular clause, phrase, or sentence, but from a view of the will and codicil as a whole. (Williams v. Fulton, 4 Ill.2d 524, 123 N.E. 495.) Each word, phrase, and clause in a will, however, should be given effect, if possible (Dillman v. Dillman, 409 Ill. 494, 100 N.E.2d 567), and where one construction renders a portion meaningless and another one gives effect to all the words used, the latter construction should be adopted. Whitmore v. Stark, 17 Ill.2d 202, 161 N.E.2d 254.
Samuel Feder devised and bequeathed the bulk of his estate to testamentary trustees. The testamentary trust was divided into two parts: Trust A and Trust B. Trust A included only the Howard Street property. Under the Will, as executed on July 9, 1964, the testamentary trustees were to have on-going duties with respect to Trust A; but under the Codicil to the Will executed on October 12, 1967, shortly before he passed away, the only duty given to them with respect to the Trust A was to convey the property included therein "upon my death" to Betty E. Feder, as trustee. The specific use of the phrase "upon my death" in the Codicil evidences an intention on the part of the testator (1) that Betty E. Feder, as trustee should hold title in fee simple and (2) that the beneficiaries for whom she was trustee should derive income immediately upon his death. In order to give effect to this intent, the bequest of the testator's interest in the Howard Street property to testamentary trustees with instructions to convey upon his death, should be construed as a specific bequest to Betty E. Feder, as trustee, which was to take effect on the death of the testator.
Under the construction of the Will and Codicil proposed by the executor, the phrase "upon my death" in the Codicil becomes meaningless *31 surplusage; however, in the construction which we adopt, the phrase is given full effect and meaning within the context of the testamentary scheme.
The directions in the testamentary trust with regard to the Howard Street property necessarily imply that starting on the date of the testator's death, Betty E. Feder, as trustee, should hold title and the beneficiaries for whom she was trustee, should receive income from the property. Due to delays in the administration of the Estate of Samuel Feder, the testamentary trustees did not convey title to the Howard Street property to Betty E. Feder, as trustee, upon the testator's death; and the executor of the estate took possession and collected the rents and income from the property. The inability of the testamentary trustees to convey title upon the death of the testator because of circumstances unrelated to the Will and Codicil does not defeat the implicit right of Betty E. Feder, as trustee, to receive the income from the Howard Street property starting on the date of the testator's death.
It was not necessary for the testator to specifically bequeath the right to income from the Howard Street property during the administration of the estate. Under the terms of the Will and Codicil, the conveyance of the property was directed upon the testator's death. The effect of this direction coupled with the specific nature of the legacy resulted in this legacy being removed from the general assets of the testator's estate. Claims against the estate have long since expired. All death taxes against the estate, as well as all costs, have been paid or provided for.
The trial judge in construing the Will and Codicil and in ordering the executor (1) the account for the rents derived from the Howard Street property (2) to distribute the net rents to Betty E. Feder, as trustee, was giving effect to the intention of the testator and enforcing the provisions implicit in the Will and Codicil.
 5 The executor next contends that there is no statutory authority for the order requiring him to make a separate and partial accounting and distribution prior to the filing of a general account. Under the Will and Codicil, as construed, Betty E. Feder, as trustee, was to receive title to the Howard Street property upon the testator's death. When the conveyance was delayed, she became entitled to the income earned from the property during the delay. The executor was under a duty to segregate the income collected from the Howard Street property from the general assets of the estate. The Probate Division of the Circuit Court did not need specific statutory authorization to act here because in entering the order it was compelling compliance with the terms of the Will and Codicil.
*32 For the reasons set forth above, the Order of the Probate Division of the Circuit Court is affirmed.
Order affirmed.
ADESKO, P.J., concurs.
Mr. JUSTICE DIERINGER, dissenting:
I respectfully dissent from the conclusion reached by the majority. I think we must also look to the land trust agreement covering the property in question, executed by the decedent and the Cosmopolitan National Bank of Chicago, wherein the Cosmopolitan National Bank took title to the real estate with the decedent as the sole beneficiary. The agreement was executed on March 18, 1958, and provides among other things:
"* * * that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate, and that such right in the avails of said real estate shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law; and that no beneficiary now has, and that no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings. avails and proceeds as aforesaid."
Under the terms of this agreement the beneficiary, Samuel Feder, agreed that it was personal property; that his right and interest should pass to his executor and not to his heirs at law; and that no beneficiary at any time should have any right, title or interest in any portion of the real estate, but only an interest in the earnings, avails and proceeds. This agreement was in full force and effect at the time of Samuel Feder's death, therefore all interest passed to the executor. The will and codicil appointed the executor a co-trustee with the Sears Bank & Trust Company, as residuary trustees, and authorized them to convey the property in question to Betty E. Feder, as trustee.
It is well established law in this state that residuary and testamentary trustees do not take until the executor turns the property over to them *33 upon the closing of the estate. In Wylie v. Bushnell, 277 Ill. 484, at page 507, the Supreme Court said:
"`If a testator in his will appoint his executor to be a trustee it is as if different persons had been appointed to each office. * * *.' Where the same person is trustee and executor his duties in the two relations are practically separate and distinct. He is not supposed to take the fund as trustee until it is separated from his funds held as executor, but where his duties as executor are completed and his duties as trustee begin, it is his duty to hold the funds as trustee. (Fenton v. Hall, 235 Ill. 552.)"
And again at page 508, the court said:
"As soon as the debts were all paid he should have closed his account with the county court as executor, turning over to himself, as trustee, any proceeds that remained after the approval of his final report by that court."
In Rahe, et al. v. Jobusch, et al., 197 Ill. App. 200, at page 205, the court said:
"Where a will creates an executor and also a trustee, and gives each of them power over the property, without specifying the particular property that each shall have jurisdiction over, we are inclined to think that the law would favor the settlement of the estate by the executor and ascertaining the amount that would pass to the trustee, which could only be done after the executor had completed his duties. `The law seems to favor the administration of the estate by the executor rather than by the trustee, and unless it clearly appears from the will that the testator intended it to be held by the trustee the executor is to be considered as holding it; and where the will provides for the coexistence of the two functions of executor and trustee, the persons exercising those duties do so as executors and not as trustees.'"
In Ramsay v. Ramsay, 10 Ill. App.2d 459, at page 471, the court said:
"His role as trustee could not be assumed until the estate was closed, when the jurisdiction of the Probate Court over the matter would cease. Wylie v. Bushnell, 277 Ill. 484; Fenton v. Hall, 235 Ill. 552. These cases are illustrative of the separate and distinct functions and capacities characteristic of an executor and a trustee."
Of course, under our present law, the Circuit Court is one unified court, and the jurisdiction question is not involved, however it does not change the separate and distinct functions of the executor and trustee.
The majority opinion construes the clause, "I direct that upon my death my trustees convey the fee simple title of the real estate described *34 in Trust A, as follows: * * *," which is the property in question, to mean that it was to be conveyed to Betty Feder, as trustee, immediately upon death. I cannot put such a construction on that clause because it ignores the existing land trust, where the title was in the Cosmopolitan National Bank and not in his trustees. It was a physical impossibility for his trustees to carry out such a direction until his trustees received the title from the Cosmopolitan National Bank upon the direction of the executor. In fact, the trustees were not in being until the estate was settled and the proceeds turned over to the trustees. In my opinion, the words "upon my death" in that clause were surplusage and meaningless.
There are other reasons why this clause should be construed as I indicated, particularly the possibility of claims, taxes and expenses of the estate as set forth by the executor in his answer to the petition of Paul Feder, wherein the petitioner asked for a conveyance of the real estate and for the rentals collected therefrom. The executor stated in his answer that it may be necessary to sell the property to provide funds, because there was a tentative amount of $18,658.84 due the Department of Internal Revenue and an unknown amount due the Inheritance Tax Department of Illinois, and in addition thereto, the expenses of probating the estate. Subsequently the executor did obtain an order from the Circuit Court allowing him to direct the Cosmopolitan National Bank to convey title to the Sears Bank & Trust Company and Julian J. Luster, as trustees, under the testamentary trust, and the same was done and, in turn, the trustees then conveyed the title to Betty E. Feder, as trustee, all in accordance with the will and codicil. It appears to me that the Circuit Court at that time was satisfied the executor was acting properly and within the terms of the will and codicil in regard to the subject property and did not consider the clause now in question as giving the trustees direct authority.
I think the construction that was later placed upon the clause in question by the Circuit Court, and affirmed in the majority opinion here, is in direct contradiction to the land trust, which could not be changed by will, and is also in contradiction to the will and codicil itself. The will of the decedent makes no provision for disposition or distribution of the income of any property, particularly the specific property in question. There is no specific bequest of the income of this property to the petitioner or to the testamentary trustees. The property is part of the residuary estate. In my opinion, the executor acted properly in collecting the rents and accounting for them as part of the estate and did not have to account to Betty E. Feder, who later became trustee of the real estate in question. I would reverse the order of the Circuit Court.