MaddeN, Judge,
delivered the opinion of the court:
These cases present the question whether certain payments which the plaintiffs received from an estate were interest, within the meaning of the income tax laws, and therefore properly included in their taxable income.
Julia S. Carnell died on February 12, 1944, a resident of Ohio. By her will she gave legacies of specified dollar amounts directly to certain of the plaintiffs, and shares in a similar legacy bequeathed to a trustee to the other plaintiffs. The administration of the estate was carried out during the years 1944, 1945, 1946 and 1947, and no distribution of any part of the estate was made until 1947. During the years 1944, 1945 and 1946, the estate had considerable taxable net *418 income, which was taxed to the estate, and those taxes were paid.
It is the law of Ohio, as it is of, many other states, that if administration of a will which gives pecuniary legacies is protracted, there should be added to the legacy when it is paid interest running from a date one year after the appointment of the executor down to the date of payment of the legacies. The doctrine is a common law creation, apparently originating in the chancery courts in England. Its philosophy is that, generally speaking, the property will be earning income during the years of administration which income, except for this doctrine, would increase the legacy of the residuary legatee, or the next of kin, if there was no residuary gift; and that those who have been named as legatees of specific amounts should not be deprived of their legacies and also of the income from the funds from which their legacies will ultimately be paid. Instead, however, of undertaking the task of relating income earned by the estate to the funds from which the legacies will be paid, the courts, for ease of administration, have awarded interest at a fixed rate. That, of course, means that the legatees will receive interest at the fixed rate, whether the estate earned more or less than that much income, or earned no income at all.[1]
The courts in applying the doctrine here under discussion call the payments “interest” and the payments are ordered by the courts as compensation to the legatees for being deprived of the possession and enjoyment of the money during the period of administration. So the payments are called interest and they look like interest in at least one important respect. Yet the plaintiffs say that, to the extent these payments of so-called interest exceed the actual income of the legacy money during the year in which the legacies are paid, the payments are not interest within the meaning of the income tax statute.
The plaintiffs’ principal reliance is on section 162 (d) (4) of the Internal Revenue Code of 1939, as added by section *419 133 (a) of the Revenue Act of 1943, c. 63, 58 Stat. 21, 26 U. S. C. (1952 ed.) 162 (d) (4). This section reads, in part, as follows:
If for any taxable year of an estate or trust the deductions allowed under subsection (b) or (c) solely by reason of paragraph (2) or (3) (A) in respect of any income which becomes payable to a legatee, heir, or beneficiary exceed the net income of the estate or trust for such year, computed without such deductions, the amount of such excess shall not be included in computing the net income of such legatee, heir, or beneficiary under subsection (b) or (c).
In explanation of the cryptic language of section 162 (d) (4), the content of the other sections referred to therein will be summarized. An estate or trust is, of course, a taxable entity for income tax purposes, separate from the executor or administrator or trustee in his individual capacity. Section 162 (b) allows as a deduction from the income of the estate or trust that amount of its income for the taxable year which is currently distributable to beneficiaries, but provides that that amount shall be included in the taxable income of the beneficiaries, whether it is actually distributed to them or not. Section 162 (c) provides that if the executor, administrator or trustee has discretion as to whether to distribute income or accumulate it, that which is actually distributed may be deducted from the estate’s taxable income, but shall be included in the income of the beneficiaries. Section 162 (d) (1) provides that if distribution may be made out of other than income, but the amount actually distributed does not exceed the distributable income of the estate for the taxable year, then the amount distributed shall be deductible to the estate and taxable to the beneficiaries as provided in sections 162 (b) and (c). If the amount distributed exceeds the income, the amount deductible by the estate and taxable to the beneficiaries is arrived at by apportioning the distribution to income and corpus of the estate.
The purpose of this statutory ensemble is to make certain that the income of an estate is taxed, as income, either to the estate or to the beneficiaries. It is equally its purpose *420 that the same income should not be taxed to both the estate and the beneficiaries.
In the instant case, the estate earned income of some $300,000 during the years 1944, 1945, and 1946. Since this income was not distributable, or, if it was distributable at all, it was so only in the discretion of the executors and was not in fact distributed, it was taxable to the estate and was so taxed. In 1947 the estate earned $20,907.06 of taxable income. In that year it distributed $189,000 to the plaintiff legatees as “interest” on their legacies, pursuant to the common law rule discussed above. The plaintiff legatees say that only the $20,907.06, the estate’s 1947 income, is taxable to them and, correspondingly, deductible to the estate. The Government says that the whole $189,000 is taxable to the legatees as interest received and deductible by the estate as interest paid. The deduction would be of almost no value to the estate since, as we have seen, it had only $20,907.06 of income in that year.
If the will had said that the legatees should have, in addition to the fixed sums of their legacies, the income earned by the estate, but had given discretion to the executor to accumulate the income until he decided to distribute it, and the estate had earned income of $168,092.94 ($189,000 minus $20,907.06) in the years 1944,1945 and 1946 and paid income taxes on that amount, and had earned income of $20,907.06 in 1947 and had in that year distributed the whole $189,000, along with the principal sums of the legacies, to the legatees, there would seem to be no doubt that $168,092.94 of the $189,000 would be tax free to the legatees, since it had been taxed to the estate. It would be deductible to the estate under section 162 (c), but the excess of the deduction over the 1947 income of the estate would, under the specific provisions of section 162 (d) (4) not be taxable to the beneficiaries. The deduction to the estate, to the extent that it exceeded the estate’s income for the year, would, of course, be worthless to the estate.
The foregoing discussion treats the $189,000 paid to the plaintiffs as if it had been income of the estate, directed by the testator to be paid to the legatees, at a time within the discretion of the executor. The Government says that it *421 need not have been and may not have been income, though there was in fact more than $300,000 of income, but may have been corpus. If it was corpus, it would seem not to have been taxable at all. It would have been as if the testator had said that he gave each legatee a specified sum plus such an additional amount as would constitute six percent of the specified sum for each year, more than one, that he had to wait for his legacy. Such a legacy, of an amount which could be made certain by mere mathematical calculation, would be nontaxable under the provision excluding gifts, devises or inheritances from taxable income.
If then, we treat the $189,000 payment as being made from the estate’s income, the provisions of section 162 make it nontaxable to the legatees, except to the extent of the $20,907.06, and if we treat it as being paid from the corpus, it is not taxable income at all. This would seem to leave to the Government only the argument that the payments are called “interest” under the common law rule, and that interest is taxable income to the recipient. But that argument is not valid. The true nature of the payment must be looked at, and the purposes of section 162 must be adhered to, regardless of the name which, for other purposes, might be applied to the payments.
We conclude that the plaintiffs are entitled to the refunds for which they sue, with interest as provided by law and judgment is entered to that effect. The exact amounts of their judgments will be determined in further proceedings under our rule 38 (c).
It is so ordered.
Laramore, Judge; Whitaker, Judge; LittletoN, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the stipulations of fact entered into between the parties, and the briefs and arguments of counsel, makes findings of fact as follows:

No. 231-BJ¡. Howard C. Davidson

1. The plaintiff filed his Federal income tax return for the calendar year 1947 with the Collector of Internal Keve- *422 nue, Baltimore, Maryland, and paid to the collector the income tax of $358.16 shown to be due on such return. The plaintiff filed his returns on the cash receipts and disbursements basis.
2.The plaintiff reported in his 1947 Federal income tax return and paid tax on an amount of $851.22 included in income and described in such return as his proportionate share of the income of the Julia Carnell Estate for 1947. This amount was included in the return as follows:
Schedule D — Gains and Losses from Sales or Exchanges of Capital Assets, Etc. Gain from Fiduciary_$502.98
Schedule E — Income from Partnerships, Estates and Trusts and Other Sources Julia Carnell Estate_ 348.24
3. The return also included the following statement:

Distribution from Oarnell Estate

During 1947 I received payment of a specific legacy of $100,000.00 from the Julia Carnell Estate of Dayton, Ohio. In addition, I received $14,583.33 which was an amount computed at 6% on $100,000.00 from February 24, 1945, to the time of the distribution. $851.22 is included in this return as taxable income ($348.24 as ordinary income, under Schedule E, and $502.98 as gain under Schedule D), being my pro rata share of the net income of the estate earned in 1947 and distributed to me. The balance consisted of earnings of the estate for prior years upon which the tax has been paid by the Estate.
4. By letter dated October 10,1951, the Internal [Revenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $4,410.91 had been determined in his income tax for 1947. This deficiency resulted from a determination that an amount of $14,583.33 received from the Julia Carnell Estate in 1947 was taxable income to the plaintiff in 1947 as interest at 6% in accordance with an order of the Probate Court. This deficiency was paid by the plaintiff on November 15, 1951. Plaintiff also paid interest on this deficiency on March 13, 1952, in the amount of $965.75 for the period March 15, 1948 to November 8, 1951.
*423 5. On August 28,1952, the plaintiff filed with the Collector of Internal Eevenue, Baltimore, Maryland, a claim for refund for $4,410.91 plus interest.
6. No statutory notice of rejection of the claim has ever been received by the plaintiff and more than six months passed after the filing of the claim and before the filing of this suit for refund.
7. Julia Carnell died on February 12,1944, a resident of Montgomery County, Ohio, leaving a will under which Jefferson Patterson, Mary P. Davidson, and Ezra N. Kuhns qualified as executors. Notice of appointment of the executors was dated February 24, 1944, and the administration of the estate was carried out during 1944, 1945, 1946, and 1947. The executors were discharged in 1947.
8. The residue of the estate of Julia S. Carnell after certain specific and general legacies was devised and bequeathed to her two children, Jefferson Patterson and Mary P. Davidson, in equal proportions. The bulk of the residuary estate consisted of stocks and bonds and real estate which were distributed in kind to the two residuary legatees.
9. The will of Julia Carnell provided that certain general legacies were to be paid to named legatees. During 1947 the executors paid such legacies in cash in amounts as follows:

Legatee Legacy

Howard C. Davidson_ $100,000.00
Mary M. B. Patterson_ 100, 000.00
Jefferson Patterson_ 135, 000. 00
Third National Bank, Trustee_ 1,000, 000.00
George W. Shaw, Guardian of George G. Shaw, John B. Shaw, and Julia P. Shaw, Minors_ 5,000. 00
Margaret S. Emmons, Guardian of Sophie S. Emmons, Mary T. Emmons, and Nelson Emmons, Minors_ 4,500.00
Total_ 1,344, 500.00
The payment of the legacy to the Third National Bank as Trustee was in accordance with a provision of the will of Julia Carnell creating the Julia S. Carnell Trust for the benefit of Stuart C. Davidson, Mary Howard Davidson, Julia Shaw Davidson, Frances Patterson Davidson, and others.
*424 10.During 1947 certain amounts were also paid in cash to the legatees by the executors in excess of the amounts of the legacies previously described in finding 9 hereof. These additional amounts were paid in accordance with the common law of the State of Ohio as established in certain decisions of the Ohio courts (not involving this plaintiff) providing for interest on pecuniary legacies from the end of the first year from the date of notice of appointment of the executors to the date of payment of the legacies at the rate of six percent per annum. These additional amounts were as follows:

Additional Legatee amount paid

Howard C. Davidson_$14,583.33
Mary M. B. Patterson_ 14, 583. 33
Jefferson Patterson_ 21,779.91
Third National Bank, Trustee_ 136,500.00
George W. Shaw, Guardian of George G. Shaw, John B. Shaw, and Julia P. Shaw, Minors_ 760.00
Margaret S. Emmons, Guardian of Sophie S. Emmons, Mary T. Emmons, and Nelson Emmons, Minors_ 684. 00
188,890.57
11. The will of Julia Carnell contained no provision for payment of interest to the legatees on their legacies. The will contained no provision for payment of income of the estate to such legatees.
12. On September 30, 1947, the executors filed with the Probate Court, Montgomery County, Ohio, an “Application as to Interest Payable on Legacies.” This application stated that certain legacies provided by the will had been or would be paid during 1947 and prayed that the court order the proper amount of interest payable on such legacies.
13. On September 30, 1947, the Probate Court, Montgomery County, Ohio, executed an “Entry as to Interest Payable on Legacies” stating that it is proper that interest be payable on such legacies from the date of notice of the appointment of the executors, February 24, 1944, to the dates of payments of the legacies at the rate of 6% per annum. The date of February 24, 1944 specified in this order should have been February 24,1945. Under the common law of the State of Ohio referred to in finding 10 hereof, *425 interest is payable only from the end of the first year from the date of notice of appointment of the executors. The amounts actually paid to the legatees in excess of the amounts of the general legacies were computed in accordance with the decisions of the Ohio courts, that is, such amounts are equal to 6% of the various legacies from February 24, 1945 to the actual dates of distribution of such legacies.
14. On December 23,1947, the executors filed their “Third Final and Distributive Report and Account of Executors” with the Probate Court, Montgomery County, Ohio. This report included the disbursements to the legatees shown in finding 7 above for the amount of their legacies. It also included the disbursements to the legatees for the additional amounts shown in finding 10. This final report and account was examined and approved by the court, and the executors were thereafter discharged.
15. The executors prepared and filed Federal income tax returns for the estate on a calendar year basis. These returns for the years 1944 through 1947 were filed on the cash receipts and disbursements basis.
16. The net income of the Julia Carnell Estate after all allowable deductions for the years 1944, 1945, and 1946 was as follows:

Net Income

1944_$95,775.60
1945_ 120, 591. 53
1946_ 80,476.36
The Julia Carnell Estate did not distribute any income during 1944, 1945, or 1946. The executors paid the Federal income taxes on these amounts of net income in accordance with Sections 161 and 162 of the Internal Revenue Code of 1939.
17. The gross income of the Julia Carnell Estate for the year 1947 was $86,885.64. The total deductions from gross income were $65,978.58 other than any deduction for amounts distributable to beneficiaries. This amount of $65,978.58 does not include any deduction for the amount of $188,890.57, the total of the additional amounts paid to legatees as shown in finding 10 hereof, or any part thereof.
18. In the 1947 Federal income tax return of the Julia Carnell Estate the executors reported an amount of $20,- *426 907.06 ($86,885.64 minus $65,978.58) as gross income less deductions but before any deduction for amounts distributed or distributable to beneficiaries. The return also reported a deduction for distributions of income to legatees, heirs, or beneficiaries of that total of $20,907.06. Accordingly, the executors’ return showed no income tax liability for 1947, and the estate paid no Federal income tax for that year.
19. The amount reported by the plaintiff in the plaintiff’s 1947 Federal income tax return as described in finding 2 hereof is that proportion of the amount of $20,907.06 which the distributions to the plaintiff by the estate during 1947 bear to the total distributions to all legatees, heirs, or beneficiaries by the estate during 1947.

No. 232-5I¡. Mary M. B. Patterson

1. The plaintiff filed her Federal income tax return for the calendar year 1947 with the Collector of Internal Eevenue, Baltimore, Maryland, and paid to the collector the income tax of $2,003.98 shown to be due on such return. The plaintiff filed her returns on the cash receipts and disbursements basis.
2. The plaintiff reported in her 1947 Federal income tax return and paid tax on an amount of $851.22 included in income and described in such return as her proportionate share of the income of the Julia Carnell Estate for 1947. This amount was included in the return as follows:
Schedule D — Gains and Losses from Sales or Exchanges of Capital Assets, Etc. Gain from Fiduciary_$502.98
Schedule E — Income from Partnerships, Estates and Trusts, and Other Sources Julia Carnell Estate_ 348.24
3.The return also included the following statement:

Distribution from Oarnell Estate

During 1947 I received payment of a specific legacy of $100,000.00 from the Julia Carnell Estate of Dayton, Ohio. In addition, I received $14,583.33 which was an amount computed at 6% on $100,000.00 from February 24, 1945, to the time of the distribution. $851.22 is included in this return as taxable income ($348.24 as ordi *427 nary income, under Schedule E, and $502.98 as gain under Schedule D), being my pro rata share of the net income of the estate earned in 1947 and distributed to me. The balance consisted of earnings of the estate for prior years upon which the tas has been paid by the Estate.
4. By letter dated October 10,1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $6,008.17 had been determined in her income tax for 1947. This deficiency resulted from a determination that an amount of $14,583.33 received from the Julia Carnell Estate in 1947 was taxable income to the plaintiff in 1947 as interest at 6% in accordance with an order of the Probate Court. This deficiency was paid by the plaintiff on December 7, 1951. Plaintiff also paid interest on this deficiency on March 10,1952, in the amount of $1,343.52 for the period March 15,1948 to December 7,1951.
5. On August 28,1952, the plaintiff filed with the Collector of Internal Revenue, Baltimore, Maryland, a claim for refund for $6,008.17 plus interest.
6. No statutory notice of rejection of the claim has ever been received by the plaintiff and more than six months passed after the filing of the claim and before the filing of this suit for refund.
7-19. Findings 7 through 19, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.

No. 233-5f Jefferson Patterson

1. The plaintiff filed his Federal income tax return for the calendar year 1947 with the Collector of Internal Revenue, Cincinnati, Ohio, and paid to the collector the income tax of $96,032.30 shown to be due on such return. The plaintiff filed his returns on the cash receipts and disbursements basis.
2. The plaintiff reported in his 1947 Federal income tax return and paid tax on an amount of $5,919.18 included in income and described in such return as his proportionate share of the income of the Julia Carnell Estate for 1947. This amount was included in the return as follows:
*428 Schedule D — Gains and Losses from Sales or Exchanges of Capital Assets, Etc. Short-Term Capital Gains and Losses From Estate of Julia S. Carnell_ $35.21
Long-Term Capital Gains and Losses From Estate of Julia S. Carnell_ 3,462.41
Schedule E — Income from Partnerships, Estates and Trusts, and Other Sources Julia Carnell Estate_2,421.56
3. The return also included the following statement:

Distribution from Carnell Estate

During 1947 I received payment of a specific legacy of $100,000.00 from the Julia Carnell Estate of Dayton, Ohio. In addition, I received $14,583.33 which was an amount computed at 6% on $100,000.00 from February 24, 1945, to the time of the distribution. $851.22 is included in this return as taxable income ($348.24 as ordinary income, under Schedule E, and $502.98 as gain under Schedule D), being my pro rata share of the net income of the estate earned in 1947 and distributed to me. The balance consisted of earnings of the estate for prior years upon which the tax has been paid by the Estate.
4. By letter dated October 10,1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $4,410.91 had been determined in his income tax for 1947. This deficiency resulted from a determination that an amount of $15,104.24 received from the Julia Carnell Estate in 1947 was taxable income to the plaintiff in 1947 as interest at 6% in accordance with an order of the Probate Court (except to the extent it resulted from another adjustment whereby $376.51 of a deduction taken for rents was disallowed which adjustment is not involved in this case). This deficiency was paid by the plaintiff on November 8, 1951. Plaintiff also paid interest on this deficiency on March 6, 1952, in the amount of $3,307.00 for the period March 15, 1948 to November 8,1951.
5. On September 22, 1952, the plaintiff filed with the Collector of Internal Revenue, Cincinnati, Ohio, a claim for refund for $15,517.60 plus interest.
*429 6. On April 29, 1953, the Commissioner of Internal Revenue by registered mail gave plaintiff formal notice of the disallowance of the claim in full.
7-10. Findings 7 through 10, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.
11. The will of Julia Carnell contained no provision for payment of interest to the legatees on their legacies. The will contained no provision for payment of income of the estate to such legatees. However, the plaintiff as one of the two residuary legatees entitled to share equally in the residue was entitled to one-half of any income of the estate which accumulated and was not required to pay debts, expenses, taxes, legacies, and other prior charges.
12-19. Findings 12 through 19, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.
No. Julia S. Carnell Trust Third, National Bank <& Trust Company, Trustee
1. The plaintiff filed its Federal income tax return for the calendar year 1947 with the Collector of Internal Revenue, Cincinnati, Ohio, and paid to the collector the income tax of $1,496.89 shown to be due on such return.
2. The plaintiff reported in its original 1947 Federal income tax return, filed on March 15, 1948, an amount of $25,315.07 as income received from the Julia Carnell Estate. Income from U. S. Treasury bonds of $12,408.72 was also reported, and deductions other than for amounts distributable to beneficiaries were $2,271.57. The amounts distributable to beneficiaries were reported in the return as $28,633.33. This resulted in a computation of net income taxable to the plaintiff as trustee of $6,818.89 and an income tax of $1,496.89 as referred to in finding 1 hereof.
3. The plaintiff reported in an amended 1947 Federal income tax return, filed on July 19, 1948, an amount of $8,442.81 included in income and described in such return as the proportionate share of the Julia S. Carnell Trust in the net income of the Julia Carnell Estate for 1947. This amount was included in income in lieu of the amount of *430 $25,317.07 referred to in paragraph 2 hereof. The amount distributable to beneficiaries was reported as $18,579.96, and the net income taxable to the plaintiff as Trustee was zero. The plaintiff has not received a refund for the difference between the tax paid with the original 1947 return ($1,-496.89) and the tax shown due by the amended 1947 return (zero).
4. The amount of $8,442.81 reported in the amended 1947 return referred to in finding 3 hereof was included in the return as follows:
Schedule A — Income from Partnerships and Other Fiduciaries Estate of Julia S. Carnell, Deceased_$3, 454. 00
Schedule C — Gains and Losses from Sales or Exchanges of Capital Assets Short-Term Capital Gains and Losses From Estate of Julia S. Carnell, Deceased_ 50.21
Long-Term Capital Gains and Losses From Estate of Julia S. Carnell, Deceased_ 4,938. 60
The return also included the following statement:
In 1947 the Executors of the will of Julia S. Carnell (1321 Third National Building, Dayton 2, Ohio) distributed to this Trustee the sum of $1,000,000.00 in accordance with Item Third of the Ninth Codicil of the will. In addition to the specific bequest the Executors distributed the sum of $136,500.00 which was an amount computed at 6% on the specific bequest from February 24, 1945 to the date of distribution to the trust in 1947.
$8,442.81 is included in this return as taxable income ($3,454.00 as ordinary income; $50.21 as short-term gain.; and $4,938.60 as long-term capital gain) being the pro rata share of the net income of the estate earned in 1947 and distributed to the trust. The balance consisted of earnings of the estate for prior years upon which the tax has been paid by the estate.
5. By letter dated October 10, 1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $16,417.40 had been determined in its income tax for 1947. This deficiency resulted from a determination that an amount of $136,500.00 received from the Julia Carnell Estate in 1947 was taxable income to the plaintiff in 1947 as interest at 6% in accordance with an order of the Probate Court. This deficiency was paid by the plaintiff on October *431 31, 1951. Plaintiff also paid interest on this deficiency on February 28,1952, in the amount of $3,572.92 for the period March 15,1948 to November 8,1951.
6. On September 22, 1952, the plaintiff filed with the Director of Internal Kevenue, Cincinnati, Ohio, a claim for refund for $17,914.20 plus interest. On May 4, 1953, the Commissioner of Internal Kevenue by registered mail gave plaintiff formal notice of the disallowance of the claim in full.
7-19. Findings 7 through 19, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.

No. 235-5^, Stuart O. Davidson

1. The plaintiff filed his Federal income tax return for the calendar year 1947 with the Collector of Internal Kevenue, Cincinnati, Ohio, and paid to the collector the income tax of $3,702.04 shown to be due on such return. The plaintiff filed his returns on the cash receipts and disbursements basis.
2. The plaintiff reported in his original 1947 Federal income tax return, filed March 22, 1948, and paid tax on an amount of $10,000.00 which was included in ordinary income in such return under Schedule E, entitled Income From Partnerships, Estates and Trusts, and Other Sources. The amount was described thereunder as income from the Julia S. Carnell Trust. The plaintiff filed an amended 1947 return on July 28, 1948, including in income an amount of $6,605.92 and described in such return as follows:
Schedule D — Gains and Losses from Sales or Exchanges of Capital Assets, Etc. Short-Term Gains and Losses from fiduciary return of Julia S. Carnell Trust- $17. 85
Long-Term Gains and Losses from fiduciary return of Julia S. Carnell Trust- 1,755. 87
Schedule E — Income from Partnerships, Estates, and Trusts and Other Sources Julia S. Carnell Trust_ 4, 832. 20
Plaintiff has not received a refund for the difference between the tax shown due by the original return ($3,702.04) and the tax shown due by the amended return ($2,308.88).
*432 3. The plaintiff’s amended 1947 return also included the following statement:
In 19471 received $38,333.33 from the Julia S. Carnell Trust, Third National Bank & Trust Company, Trustee, Dayton 2, Ohio.
I am informed that the Trustee received in 1947, in addition to the specific bequest stated in the will of my grandmother, Julia S. Carnell, an additional sum, $136,500.00, which was an amount computed at 6% on the principal bequest from February 24, 1945 to the date of distribution to the trust in 1947. $8,442.81 of the additional payment was earned by the estate in 1947 and distributed to the trust and I am informed that $8,442.81 is considered taxable income by the Trustee, under section 162, Internal Revenue Code.
The distribution to me in 1947 constituted 35.554% of the total distribution made by the Trustee in 1947. Accordingly 35.554% of the trust’s taxable income for 1947, or a total of $6,605.92, is included herein ($4,832.20 as ordinary income; $17.85 as short-term gain; and $1,755.87 as long-term gain) as taxable income for 1947 the balance being considered as earnings of the estate for prior years upon which the tax has been paid by the estate.
4. By letter dated October 10,1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $16,026.21 had been determined in his income tax for 1947. This deficiency resulted from a determination that distributions to the plaintiff from the Julia S. Carnell Trust during 1947 of $38,333.33 were taxable income to the plaintiff in 1947. An amount of $28,333.33 was added to plaintiff’s income as the amount taxable in excess of the $10,000.00 reported by plaintiff in his original 1947 return. The determination resulted from a determination in the case of the Julia S. Carnell Trust that an amount of $136,-500.00 received by the Julia S. Carnell Trust from the Julia Carnell Estate in 1947 was taxable income to the Julia S. Carnell Trust in 1947 as interest at 6% in accordance with an order of the Probate Court.
5. The plaintiff paid the deficiency of $16,026.21 on November 8, 1951. Plaintiff also paid interest on this deficiency on February 26, 1952, in the amount of $3,508:86 for the period from March 15,1948, to November 8,1951.
*433 6. On September 22,1952, plaintiff filed with the Director of Internal Eevenue, Cincinnati, Ohio, a claim for refund for $17,419.37 plus interest. Plaintiff received a statutory notice of rejection of the claim from the Commissioner of Internal Eevenue dated April 29, 1953.
7-18. Findings 7 through 18, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.
19. The amount reported by the plaintiff in the plaintiff’s amended 1947 Federal income tax return as described in finding 2 hereof is that proportion of the amount of $18,-579.96 which the total distributions to the plaintiff by the Julia S. Carnell Trust during 1947 bear to the total distributions to all beneficiaries by the trust during 1947. The amount of $18,579.96 is the amount reported by the Julia S. Carnell Trust in its amended 1947 return as net income before any deduction for amounts distributable to beneficiaries. There was included in such return as income from the Julia Carnell Estate a total amount of $8,442.81, which is that proportion of the amount of $20,907.06 which the total distributions to the trust by the estate during 1947 bear to the total distributions to all legatees, heirs, or beneficiaries by the estate during 1947.
20. By letter dated October 10,1951, the Internal Eevenue Agent in Charge, Cincinnati, Ohio, determined that the net income of the Julia S. Carnell Trust for 1947 was $146,637.15 which resulted from including the $136,500.00 referred to in finding 10 hereof in the income of the trust as income received from the Julia Carnell Estate rather than the amount of $8,442.81 referred to in finding 19 hereof.
21. The total distributions by the Julia S. Carnell Trust to beneficiaries during 1947 were $107,816.64, of which $38,-333.33 was distributed to the plaintiff.

No. 236-5k. Mary H. D. Swift

1. The plaintiff filed her Federal income tax return for the calendar year 1947 with the Collector of Internal Eevenue, Cincinnati, Ohio, and paid to the collector the income tax of $1,648.00 shown to be due on such return. The plaintiff *434 filed ber returns on the cash receipts and disbursements basis.
2. The plaintiff reported in her original 1947 Federal income tas return, filed March 11, 1948, and paid tax on an amount of $5,833.33 which was included in ordinary income in such return under Schedule E, entitled Income From Partnerships, Estate and Trusts, and Other Sources. The amount was described thereunder as income from the Julia S. Car-nell Trust. The plaintiff filed an amended 1947 return on July 26, 1948, including in income an amount of $3,446.58 and described in such return as follows:
Schedule D — Gains and Losses from Sales or Exchanges of Capital Assets, etc. Short-Term Gains and Losses From fiduciary return of Julia S. Carnell Trust_ $9.31
Long-Term Gains and Losses From fiduciary return of Julia S. Carnell Trust_ 916.11
Schedule E — Income from Partnerships, Estates, and Trusts and Other Sources Julia S. Carnell Trust_2, 521.16
Plaintiff has not received a refund for the difference between the tax shown due by the original return ($1,648.00) and the tax shown due by the amended return ($897.87).
3. The plaintiff’s amended 1947 return also included the following statement:
In 1947 I received $19,999.99 from the Julia S. Carnell Trust, Third National Bank & Trust Company, Trustee, Dayton 2, Ohio.
I am informed that the Trustee received in 1947, in addition to the specific bequest stated in the will of my grandmother, Julia S. Carnell, an additional sum, $136,500.00, which was an amount computed at 6% on the principal bequest from February 24,1945 to the date of distribution to the trust in 1947. $8,442.81 of the additional payment was earned by the estate in 1947 and distributed to the trust and I am informed that $8,442.81 is considered taxable income by the Trustee, under section 162, Internal Eevenue Code.
The distribution to me in 1947 constituted 18.550% of the total distribution made by the Trustee in 1947. Accordingly 18.550% of the trust’s taxable income for 1947, or a total of $3,446.58, is included herein ($2,521.16 as ordinary income; $9.31 as short-term gain; and $916.11 as long-term gain) as taxable income for 1947 *435 the balance being considered as earnings of the estate for prior years upon which the tax has been paid by the estate.
4. By letter dated October 10, 1951, the Internal Kevenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $6,002.20 had been determined in her income tax for 1941. This deficiency resulted from a determination that distributions to the plaintiff from the Julia S. Carnell Trust during 1947 of $19,999.99 were taxable income to the plaintiff in 1947. An amount of $14,166.66 was added to plaintiff’s income as the amount taxable in excess of the $5,833.33 reported by plaintiff in her original 1947 return. The determination resulted from a determination in the case of the Julia S. Carnell Trust that an amount of $136,500.00 received by the Julia S. Carnell Trust from the Julia Carnell Estate in 1947 was taxable income to the Julia S. Carnell Trust in 1947 as interest at 6% in accordance with an order of the Probate Court.
5. The plaintiff paid the deficiency of $6,002.20 on November 8, 1951. Plaintiff also paid interest on this deficiency on February 29, 1952, in the amount of $1,314.15 for the period from March 15, 1948, to November 8, 1951.
6. On September 22,1952, plaintiff filed with the Director of Internal Bevenue, Cincinnati, Ohio, a claim for refund for $6,752.33 plus interest. Plaintiff received a statutory notice of rejection of the claim from the Commissioner of Internal Bevenue dated April 29,1953.
7-18. Findings 7 through 18, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.
19. The amount reported by the plaintiff in the plaintiff’s amended 1947 Federal income tax return as described in finding 2 hereof is that proportion of the amount of $18,-579.96 which the total distributions to the plaintiff by the Julia S. Carnell Trust during 1947 bear to the total distributions to all beneficiaries by the trust during 1947. The amount of $18,579.96 is the amount reported by the Julia S. Carnell Trust in its amended 1947 return as net income before any deduction for amounts distributable to beneficiaries. There was included in such return as income from *436 the Julia Carnell Estate a total amount of $8,442.81, which is that proportion of the amount of $20,907.06 which the total distributions to the trust by the estate during 1947 bear to the total distributions to all legatees, heirs, or beneficiaries by the estate during 1947.
20. By letter dated October 10,1951, the Internal Revenue A gent, in Charge, Cincinnati, Ohio, determined that the net income of the Julia S. Carnell Trust for 1947 was $146,637.15 which resulted from including the $136,500.00 referred to in finding 10 hereof in the income of the trust as income received from the Julia Carnell Estate rather than the amount of $8,442.81 referred to in finding 19 hereof.
21. The total distributions by the Julia S. Carnell Trust to beneficiaries during 1947 were $107,816.64, of which $19,-999.99 was distributed to the plaintiff.
No. 237 — 54. Frances P. Davidson
1. The plaintiff filed her Federal income tax return for the calendar year 1947 with the Collector of Internal Revenue, Cincinnati, Ohio, and paid to the collector the income tax of $1,522.52 shown to be due on such return. The plaintiff filed her returns on the cash receipts and disbursements basis.
2. The plaintiff reported in her original 1947 Federal income tax return, filed March 15, 1948, and paid tax on an amount of $5,000.00 which was included in ordinary income in such return under Schedule E, entitled Income From Partnerships, Estates and Trusts, and Other Sources. The amount was described thereunder as income from the Julia S. Carnell Trust. The plaintiff filed an amended 1947 return on July 26, 1948, including in income an amount of $3,302.96 and described in such return as follows:
Schedule D — Gains and Losses from Sales or Exchanges of Capital Assets, etc. Short-Term Gains and Losses from fiduciary return of Julia S. Carnell Trust_ $8.93
Long-Term Gains and Losses from fiduciary return of Julia S. Carnell Trust_ 877. 93
Schedule E — Income from Partnerships, Estates, and Trusts and Other Sources Julia S. Carnell Trust_2,416.10
*437 Plaintiff has not received a refund for the difference between the tax shown due by the original return ($1,522.52) and the tax shown due by the amended return ($964.18).
3. The plaintiff’s amended 1947 return also included the following statement:
In 19471 received $19,166.66 from the Julia S. Carnell Trust, Third National Bank & Trust Company, Trustee, Dayton 2, Ohio.
I am informed that the Trustee received in 1947, in addition to the specific bequest stated in the will of my grandmother, Julia S. Carnell, an additional sum, $136,-500.00, which was an amount computed at 6% on the principal bequest from February 24, 1945 to the date of distribution to the trust in 1947. $8,442.81 of the additional payment was earned by the estate in 1947 and distributed to the trust and I am informed that $8,442.81 is considered taxable income by the Trustee, under section 162, Internal Revenue Code.
The distribution to me in 1947 constituted 17.777% of the total distribution made by the Trustee in 1947. Accordingly 17.777% of the trust’s taxable income for 1947, or a total of $3,302.96, is included herein ($2,416.10 as ordinary income; $8.93 as short-term gain; and $877.93 as long-term gain) as taxable income for 1947 the balance being considered as earnings of the estate for prior years upon which the tax has been paid by the estate.
4. By letter dated October 10, 1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $5,893.44 had been determined in her income tax for 1947. This deficiency resulted from a determination that distributions to the plaintiff from the Julia S.Carnell Trust during 1947 of $19,166.66 were taxable income to the plaintiff in 1947. An amount of $14,166.66 was added to plaintiff’s income as the amount taxable in excess of the $5,000.00 reported by plaintiff in her original 1947 return. The determination resulted from a determination in the case of the Julia S. Carnell Trust that an amount of $136,500.00 received by the Julia S. Carnell Trust from the Julia Carnell Estate in 1947 was taxable income to the Julia S. Carnell Trust in 1947 as interest at 6% in accordance with an order of the Probate Court.
*438 5. The plaintiff paid the deficiency of $5,893.44 on November 8, 1951. Plaintiff also paid interest on this deficiency on February 29, 1952, in the amount of $1,290.34 for the period from March 15, 1948, to November 8,1951.
6. On September 22,1952, plaintiff filed with the Director of Internal Revenue, Cincinnati, Ohio, a claim for refund for $6,451.78 plus interest. Plaintiff received a statutory notice of rejection of the claim from the Commissioner of Internal Revenue dated April 29,1953.
7-18. Findings 7 through 18, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.
19. The amount reported by the plaintiff in the plaintiff’s amended 1947 Federal income tax return as described in finding 2 hereof is that proportion of the amount of $18,-579.96 which the total distributions to the plaintiff by the Julia S. Carnell Trust during 1947 bear to the total distributions to all beneficiaries by the trust during 1947. The amount of $18,579.96 is the amount reported by the Julia S. Carnell Trust in its amended 1947 return as net income before any deduction for amounts distributable to beneficiaries. There was included in such return as income from the Julia Carnell Estate a total amount of $8,442.81, which is that proportion of the amount of $20,907.06 which the total distributions to the trust by the estate during 1947 bear to the total distributions to all legatees, heirs, or beneficiaries by the estate during 1947.
20. By letter dated October 10,1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, determined that the net income of the Julia S. Carnell Trust for 1947 was $146,637.15 which resulted from including the $136,500.00 referred to in finding 10 hereof in the income of the trust as income received from the Julia Carnell Estate rather than the amount of $8,442.81 referred to in finding 19 hereof.
21. The total distributions by the Julia S. Carnell Trust to beneficiaries during 1947 were $107,816.64, of which $19,-166.66 was distributed to the plaintiff.

*439
No. %38-5 1¡, Julia 8. Davidson

1. The plaintiff filed her Federal income tax return for the calendar year 1947 with the Collector of Internal Eevenue, Cincinnati, Ohio, and paid to the collector the income tax of $1,522.52 shown to be due on such return. The plaintiff filed her returns on the cash receipts and disbursements basis.
2. The plaintiff reported in her original 1947 Federal income tax return, filed March 15, 1948, and paid tax on an amount of $5,000.00 which was included in ordinary income in such return under Schedule E, entitled Income From Partnerships, Estate and Trusts, and Other Sources. The amount was described thereunder as income from the Julia S. Carnell Trust. The plaintiff filed an amended 1947 return on July 26, 1948, including in income an amount of $3,302.96 and described in such return as follows:
Schedule D — Gains and Losses from Sales or Exchanges of Capital Assets, etc. Short-Term Gains and Losses From fiduciary return of Julia S. Carnell Trust_ $8.93
Long-Term Gains and Losses From fiduciary return of Julia S. Carnell Trust_ 877.93
Schedule E — Income from Partnerships, Estates, and Trusts and Other Sources Julia S. Carnell Trust_2,416.10
Plaintiff has not received a refund for the difference between the tax shown due by the original return ($1,522.52) and the tax shown due by the amended return ($964.18).
3.The plaintiff’s amended 1947 return also included the following statement:
In 19471 received $19,166.66 from the Julia S. Carnell Trust, Third National Bank & Trust Company, Trustee, Dayton 2, Ohio.
I am informed that the Trustee received in 1947, in addition to the specific bequest stated in the will of my grandmother, Julia S. Carnell, an additional sum, $136,-500.00, which was an amount computed at 6% on the principal bequest from February 24, 1945 to the date of distribution to the trust in Í947. $8,442.81 of the additional payment was earned by the estate in 1947 and distributed to the trust and I am informed that $8,442.81 is considered taxable income by the Trustee, under section 162, Internal Eevenue Code.
*440 The distribution to me in 1947 constituted 17.777% of the total distribution made by the Trustee in 1947. Accordingly 17.777% of the trust’s taxable income for 1947, or a total of $3,302.96, is included herein ($2,416.10 as ordinary income; $8.93 as short-term gain; and $877.93 as long-term gain) as taxable income for 1947 the balance being considered as earnings of the estate for prior years upon which the tax has been paid by the Estate.
4. By letter dated October 10,1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, notified the plaintiff that a deficiency of $5,893.44 had been determined in her income tax for 1947. This deficiency resulted from a determination that distributions to the plaintiff from the Julia S. Carnell Trust during 1947 of $19,166.66 were taxable income to the plaintiff in 1947. An amount of $14,166.66 was added to plaintiff’s income as the amount taxable in excess of the $5,000.00 reported by plaintiff in her original 1947 return. The determination resulted from a determination in the case of the Julia S. Carnell Trust that an amount of $136,500.00 received by the Julia S. Carnell Trust from the Julia Carnell Estate in 1947 was taxable income to the Julia S. Carnell Trust in 1947 as interest at 6% in accordance with an order of the Probate Court.
5. The plaintiff paid the deficiency of $5,893.44 on November 8, 1951. Plaintiff also paid interest on this deficiency on February 25, 1952, in the amount of $1,290.34 for the period from March 15, 1948, to November 8, 1951.
6. On September 22,1952, plaintiff filed with the Director of Internal Revenue, Cincinnati, Ohio, a claim for refund for $6,451.78 plus interest. Plaintiff received a statutory notice of rejection of the claim from the Commissioner of Internal Revenue dated April 29,1953.
7-18. Findings 7 through 18, inclusive, of the Findings of Fact in case No. 231-54 are incorporated herein and made a part hereof by reference.
19. The amount reported by the plaintiff in the plaintiff’s amended 1947 Federal income tax return as described in finding 2 hereof is that proportion of the amount of $18,-579.96 which the total distributions to the plaintiff by the Julia S. Carnell Trust during 1947 bear to the total dis *441 tributions to all beneficiaries by the trust during 1947. The amount of $18,579.96 is the amount reported by the Julia S. Carnell Trust in its amended 1947 return as net income before any deduction for amounts distributable to beneficiaries. There was included in such return as income from the Julia Carnell Estate a total amount of $8,442.81, which is that proportion of the amount of $20,907.06 which the total distributions to the trust by the estate during 1947 bear to the total distributions to all legatees, heirs, or beneficiaries by the estate during 1947.
20. By letter dated October 10,1951, the Internal Revenue Agent in Charge, Cincinnati, Ohio, determined that the net income of the Julia S. Carnell Trust for 1947 was $146,637.15 which resulted from including the $136,500.00 referred to in finding 10 hereof in the income of the trust as income received from the Julia Carnell Estate rather than the amount of $8,442.81 referred to in finding 19 hereof.
21. The total distributions by the Julia S. Carnell Trust to beneficiaries during 1947 were $107,816.64, of which $19,166.66 was distributed to the plaintiff.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are entitled to recover, together with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Ride 38 (c).
In accordance with the opinion of the court and on a memorandum report of the commissioner, it was ordered July 12, 1957, that judgment be entered for the following named plaintiffs in the respective amounts, as follows:
No. 231-54 Howard O. Davidson_ $5,376. 66
No. 232-54 Mary M. B. Patterson_ 7,351.69
No. 233-54 Jefferson Patterson_ 18,824.55
No. 234r-54 Julia S. Carnell Trust, TMrd National Bank & Trust Company, Trustees_ 21, 506.25
No. 235-54 Stuart C. Davidson_ 20,928.23
No. 236-54 Mary H. D. Swift_ 8,066.48
No. 237-54 Frances P. Davidson_ 7,742.12
No. 238-54 Julia S. Davidson_ 7,742.12

See, In general, on the doctrine, Sitwell v. Bernard, 6 Ves. 520, 31 Eng. Rep. (reprint) 1174, 1182; Webster v. Bible Society, 50 Ohio St. 1, 33 N. E. 297; Gray v. Case School of Applied Science, 62 Ohio St. 1, 56 N. E. 484; State Bank of Chicago v. Gross, 344 Ill. 512, 176 N. E. 739; In re Stanfield’s Estate, 135 N. Y. 292, 31 N. E. 1013; Welch v. Adams, 152 Mass. 74, 25 N. E. 34.